## 56251. TRANSAMERICA INSURANCE COMPANY v. SMITH et al.

DEEN, Presiding Judge.

Smith owned various trucks which he used in a garbage disposal business and insured with defendant Transamerica Insurance Co. by paying a cash down payment and financing the rest through American National Bank & Trust Co. of Chattanooga, the intervenor and loss payee. A Chevrolet garbage truck was left one morning with engine running to warm up; it "exploded" and burned on July 10, 1971, during the 1970-1971 policy period. Defendant refused to pay on the ground that the fire and/or explosion coverage had been eliminated by endorsement. From a verdict for the insured and loss payee bank the insurer appeals.

1. The evidence, although contradictory, supports the verdict. Kenney, agent for the insurer, testified that Mrs. Smith, the wife of the insured, had called to cancel the extended coverage prior to the policy commencement

date when she learned what the total amount of insurance would be. She categorically denied this. No endorsement reducing coverage turned up until a copy was sent the creditor bank almost a year later; this was vigorously attacked as a cover-up. The amounts actually paid and charged for insurance accord with neither the plaintiff's nor the defendant's version of what happened. Defendant admits that there was an error in the policy, which fails to show fire coverage but does show explosion coverage; it contends that fire coverage was first intended, but was later canceled by the endorsement. The latter, however, was not received until many months later by either the insured or the loss payee. These and other circumstances support inferences favorable to the plaintiff and intervenor; the verdict finding for the insured is not without supporting evidence.

2. Code § 56-2430 provides that cancellation of a policy, where otherwise proper, may only be effected by complying with the notice provisions therein set out. There is no firm testimony that the notice was complied with, and both the insured and the bank (loss payee) testified positively that it was not. This alone justifies the direction of a verdict in favor of the bank on liability unless, as contended by the appellant, the statute is inapplicable because what had happened was not a "cancellation" but an elimination of a *portion* of the coverage, occurring prior to the effective date of the replacement policy. We are cited to no law supporting this proposition. *Garner v. Govt. Emp. Ins. Co.*, 129 Ga. App. 235 (199 SE2d 350) (1973) concerns not a cancellation of coverage but merely a failure to renew coverage. Here, although the effective date had not arrived, the policy had in fact been mailed out. This being so, the loss payee was entitled to notice of elimination of coverage (whether termed cancellation, elimination, failure to renew, or whatever). It did not receive this notice, and the direction of a verdict in its favor on this issue was proper. The case is distinguished from *Barnes v. Ga. Farm &c. Ins. Co.*, 140 Ga. App. 515 (231 SE2d 569) (1976) because there the policy lapsed by its terms at the end of the contract period. Here the policy had been forwarded and indicated specified coverage which the company now denies.

3. From what has been said above, Enumeration 9, complaining of the allowance of a question put to the insurance agent relating to the manner of cancellation, and error 12 insisting that the court erred in instructing the jury on this issue, were properly denied. The policy was mailed out and showed certain coverages. If and when these were eliminated, the evidence having demanded a finding that the loss payee was not informed of the fact, cancellation pro tanto was involved. Cf. *American Indem. Ins. Co. v. Brown,* 134 Ga. App. 34 (213 SE2d 135) (1975). The issue of cancellation or elimination of the physical damage coverage (whether fire or explosion) was properly left to the jury so far as the insured was concerned, and directed only as against the loss payee who had no notice of the contended change.

4. By stipulation between these parties it appears that the insured owed the loss payee the sum of $11,495.91 on its cross claim against the plaintiff. The court accordingly found Smith's liability to the bank in this amount, counsel for the insurer having made the point that the stipulation did not bind the defendant. The jury found a total verdict of $17,725, to be divided $5,714.09 in favor of the plaintiff and $12,010.91 in favor of the bank. The court included these amounts in the judgment, along with the $11,495.91 owing from the plaintiff to the bank on the cross complaint. The amount of $12,010.91 returned in favor of the bank is the amount alleged owed in the pleadings and there supported by evidence. The judgment is attacked on the theory that it allows a double recovery to the bank. This is unfounded. The bank is entitled to no more than was owing to it on the bank loan at the time of the verdict. The difference in the two figures appears to have come about by reason of a payment made by Smith to the bank during the course of litigation. This, however, does not affect the defendant, since the defendant did not elect to be bound by the stipulation. It did not in any event increase the liability of the insurer (that having been determined by the value of the truck) but only the division of the amount of liability between the parties. No double recovery is involved.

5. An official of the intervenor bank, testifying without objection from records showing the loan history of

the demolished truck, stated that he knew Smith, the plaintiff, had procured insurance from the defendant and that it designated the bank as loss payee. He then identified the loss payable clause endorsement as the "description of the same truck which was covered by the American National Bank's security interest and contract with James Smith." The endorsement (objected to because, although filled out, it was unsigned, and was not included on the original policy attached as an exhibit to the complaint) was sufficiently identified as a business record under Code § 38-711 by the officer having charge of such records. *Timothy McCarthy Const. Co. v. Southern Detectives,* 125 Ga. App. 205 (186 SE2d 895) (1971). The objection that it is unsigned (the insurance agent's name is typed in) is without merit in the absence of testimony that a handwritten signature is necessary to the validity of the endorsement.

6. Lastly, there is a complaint that Mrs. Smith was not required to answer questions concerning insurance payments on other policies. The complaint is that the insurer's case was prejudiced by not allowing counsel to determine how much money the Smiths paid for their total insurance, including cars not involved in this case. Even if this line of questioning was relevant, Mrs. Smith replied to further questioning on the subject by stating that she did not know "because all of this other was business that was kept in one certain place . . . I don't know about this other, I couldn't tell you." Error in excluding testimony is not reversible where the same witness later answers substantially the same state of facts or indicates lack of knowledge of the subject matter. *Ogburn v. Jones,* 142 Ga. 360 (3) (82 SE 1070) (1914).

*Judgment affirmed. Smith and Banke, JJ., concur.*

SUBMITTED SEPTEMBER 11, 1978 — DECIDED OCTOBER 5, 1978 — REHEARING DENIED OCTOBER 18, 1978 —

*Frank M. Gleason, James A. Secord,* for appellant.
*J. Donald Bennett, John I. Foster, Brown, Harriss,*

*Hartman & Ruskaup, Larry D. Ruskaup, Burton Brown,* for appellees.