### 65524. HARDEN et al. v. THE STATE.

SOGNIER, Judge.

Freddie Harden and his brother, Howard Harden, were convicted of voluntary manslaughter and aggravated assault; they enumerate several errors on appeal.

After an exchange of words at Wrights Barbecue Grill Kenneth Wright challenged Freddie Harden to a fight. Freddie returned home but was followed by Kenneth and Claude Wright. Kenneth again challenged Freddie to a fight. Freddie declined and went inside his house; the Wrights departed. Freddie and his brother, Howard, got their pistols and in Howard's car drove past Wright's Barbecue. Kenneth and Claude Wright got in Claude's car and followed the Hardens. Howard Harden turned onto a dirt road and stopped his car; Claude Wright stopped on the main road across from the Hardens. The Wrights got out of their car and as they started across the road toward the Hardens they were both shot two times by the Hardens. Kenneth was injured seriously and Claude died as a result of the gunshot wounds. Both appellants testified and acknowledged that they shot the Wrights, but claimed they did so because they were afraid the Wrights were going to shoot them (the Hardens).

1. Appellants contend that the trial court erred in its charge to the jury by defining "mutual combat" four times, thereby emphasizing unduly the prosecution's contentions in this regard. This contention is not supported by the record.

The trial court defined the phrase "mutual combat" and then informed the jury that a mutual intention to fight need not be proved directly, but could be inferred from the conduct of the parties and the facts and circumstances in evidence. Thereafter, the court charged the jury that if they found that there was a mutual intention to fight, and *only* if they so found, they should consider whether or not the killing was necessary to save appellants own lives. Thus, the court did not define mutual combat four times, as alleged, nor did the court emphasize any contentions made by the prosecution. This court cannot consider factual representations in a brief which do not appear in the record. *Gray v. State,* 156 Ga. App. 117, 119 (3) (274

SE2d 115) (1980). Further, this court has held: "It is well settled that the mere fact that the contentions of one side are stated more at length [in the court's charge] than those of the other does not show that undue stress was laid upon or undue prominence given to the contentions so stated." *Wall v. State,* 37 Ga. App. 511, 512 (1) (140 SE 787) (1927). Accordingly, this enumeration of error is without merit.

2. Appellants contend it was error to allow a GBI agent to read verbatim from a transcript of a taped statement made by Howard Harden to the agent. Appellants made no objection to the voluntariness of Howard Harden's statement, and did not contest the fact that he had been advised properly of his rights prior to making a statement to Mike Seigler, a GBI agent. We have held that it is not error to allow a detective to read to the jury a waiver of rights form and a defendant's confession after his counsel had stipulated that the confession was voluntary. *Ratliff v. State,* 150 Ga. App. 695, 696 (2) (258 SE2d 324) (1979). While counsel in the instant case did not *stipulate* that the confession was voluntary, in response to a question from the court appellants' counsel stated that a Jackson-Denno hearing (Jackson v. Denno, 378 U. S. 368 (84 SC 1774, 12 LE2d 908)) on voluntariness was not necessary. Thus, it was not error to allow Seigler to read the transcript of Howard Harden's taped confession. *Ratliff,* supra.

3. Appellants also contend it was error to allow the prosecuting attorney to read to the jury a transcript of tapes not in evidence. In regard to this contention the transcript shows that Freddie Harden testified on direct examination that he got his gun from his house because he was scared of the Wright brothers. On cross-examination the prosecuting attorney, reading from the transcript in an effort to impeach Freddie, asked him if he had not made certain statements to Mike Seigler indicating that he was *not* scared of the Wrights and had told them so. Appellants moved for a mistrial on the ground that the tapes from which the transcript was made had not been admitted in evidence. The motion was denied and Freddie acknowledged making the statement to Seigler. Appellants contend the denial of their motion for a mistrial was error.

A witness may be impeached by prior contradictory statements as to matters relevant to his testimony and to the case; before the contradictory statements may be admitted against him the time, place, person and circumstances attending the former statement *shall be called to his mind* with as much certainty as possible. OCGA § 24-9-83 (Code Ann. § 38-1803). The prosecuting attorney followed this procedure by asking Freddie Harden if he had made certain statements to Seigler when Freddie was interviewed by Seigler after

the shooting. "[T]he prior inconsistent statement *becomes admissible* when the witness *denies* having made such statement. When a witness *admits* unequivocally that he made a prior inconsistent or contradictory statement, he has thereby impeached himself and it is not error to exclude the prior [taped] statement from evidence." (Emphasis supplied.) *Dickey v. State,* 240 Ga. 634, 639 (3) (242 SE2d 55) (1978).

It is apparent from the Code and the rules set forth in *Dickey* that it is not necessary to admit the alleged inconsistent statement (in this case, tapes) into evidence before questioning the witness about the statement. In fact, the prior inconsistent statement becomes admissible only if the witness *denies* having made the statement. Id. Thus, it was not error to allow questioning about the prior inconsistent statement without first admitting the taped statement into evidence.

4. The remaining enumerations of error are without merit.
*Judgment affirmed. Quillian, P. J., and Pope, J., concur.*

DECIDED MAY 5, 1983.

*William C. Calhoun,* for appellants.
*Sam B. Sibley, Jr., District Attorney,* for appellee.