### 77919. J. C. PENNEY CASUALTY INSURANCE COMPANY v. WOODARD et al.

(380 SE2d 282)

BIRDSONG, Judge.

J. C. Penney Casualty Insurance Company appeals from a jury verdict judgment of $140,000 plus pre-judgment interest, awarded under uninsured motorist coverage for the death of 17-year-old Darien L. Woodard.

Young Woodard was driving his uncle's car which was insured by Penney. It is undisputed that Woodard's parents held $60,000 in uninsured motorist coverage through State Farm Mutual Automobile Insurance Company, but that they failed to timely notify State Farm of the boy's death, so that coverage was unavailable. State Farm is excused from the case. Penney, by motion in limine, sought a ruling

that the State Farm coverage was primary and the Penney uninsured motorist coverage of the uncle's vehicle was secondary, with the contention that Penney's $100,000 liability coverage would therefore be limited to the excess over the $60,000 State Farm insurance that was *available* but not *availed*. The trial court found Penney liable, if at all, to the full limit of $100,000 of its uninsured motorist coverage of the vehicle's owner. From this and other alleged erroneous rulings and actions, Penney appeals. *Held*:

1. The appellees argue persuasively that since Penney accepted timely premiums for $100,000 coverage from the vehicle's owner, and since the Penney policy does not require some other "primary" insurance be available or availed (c.f., *Lamb Bros. Lumber Co. v. South Car. Ins. Co.*, 186 Ga. App. 51 (366 SE2d 388)), Penney should not logically be allowed to take unconscionable advantage of the fact that there was other coverage available for which the appellants failed to give timely notice after the death of their son.

This proposition, however, runs smack into the general principles that parties are required to mitigate their damages, and that the plaintiff/appellees should not be allowed to take advantage of their own neglect, to Penney's undue detriment. Penney analogizes to this case three cases involving insurance recovery set-offs for the plaintiff's *available* or *eligible* no-fault benefits: *Davidson v. Bradford*, 245 Ga. 8 (262 SE2d 780); *North v. M. C. Anderson, Inc.*, 165 Ga. App. 407 (300 SE2d 2) and *Glover v. Grogan*, 162 Ga. App. 768, 771 (292 SE2d 465). The difference, however, is that drivers are required by law to secure no-fault benefits but uninsured motorist coverage is not mandatory. If, neither by statute nor by an insurance policy, no other (primary) uninsured coverage is required and the insurer's premium is not scaled to the existence or availability of other insurance, there lies no basis to modify an insured's unqualified *contract rights* to the full coverage available from an insurer.

This situation is more analogous to that of *State Farm &c. Ins. Co. v. Bd. of Regents &c.*, 226 Ga. 310 (174 SE2d 920), where it was held that uninsured coverage is a matter of contract; and although certainly the fact of insurer's liability is dependent upon the tortfeasor's liability, nevertheless the tortfeasor is not *entitled to* a set-off for the amount of insurance paid, for that is a matter of contract. It is "a *contractual obligation* and not in discharge of the tortfeasor's liability to the injured or damaged person." Id. p. 311. So, here, Penney's obligation to pay to the limit of its coverage is a *contractual obligation* of Penney, not in discharge of the tortfeasor's liability or of the contractual liability of any other insurer on his (or the vehicle owner's) account.

If the plaintiffs had timely filed notice with State Farm, the resulting benefit of $60,000 in primary uninsured coverage to satisfy the

$140,000 judgment, would have been a bonus for Penney. But this existence of other coverage is not a bonus to which Penney is entitled by contract or law, and the plaintiffs' failure to take advantage of that other insurance cannot be used to modify Penney's contract obligation.

This is, we agree, a difficult question where the plaintiffs have failed to reduce their damages by availing themselves of their own primary insurance; but "mitigation of damages" is in fact not a principle to apply in every case. It does not apply in a case of fraud, a positive tort (OCGA § 51-12-11) or breach of warranty. *Haley v. Oaks Apts.*, 173 Ga. App. 44, 45 (325 SE2d 602). In a breach of contract case, the injured party is required by statute to "lessen [his] damages so far as is practicable . . ." (OCGA § 13-6-5), but even that rule of law does not apply "where there is *an absolute promise to pay.*" (Emphasis supplied.) Id. p. 46, quoting *Reid v. Whisenant*, 161 Ga. 503, 509-510 (131 SE 904). Therefore, they are not required to mitigate damages to which they are contractually entitled as a matter of agreement and premium. Moreover, the plaintiffs in this case did not through their own negligence and delay in applying for other insurance that was available, primary or otherwise, "set about to make their damages worse" so as deliberately to take unconscionable advantage of Penney. Id. p. 46. They simply failed to avail Penney of a bonus. Their failure to take advantage of other insurance had nothing to do with Penney's contractual obligation.

Since the appellees were not required by law or contract to reduce Penney's liability by obtaining, maintaining, or availing themselves of other insurance, we conclude neither were they required by any legal or equitable principle of duty to mitigate Penney's *"absolute promise to pay"* in this case. (Emphasis supplied.) Id.

Under today's law, the fact that plaintiffs had other benefits or insurance *"available"* would be admissible for the factfinders' consideration as to damages (OCGA § 51-12-1); but one who is bound by an absolute promise to pay any liability is not *entitled* to a set-off by that code section.

We conclude the trial court did not err in refusing to limit Penney's coverage to any excess of $60,000, up to the policy limit of $100,000.

2. The appellant Penney contends that, on the evidence, it should have been entitled to a directed verdict as to liability. Darien Woodard's death at seventeen occurred while he was driving his uncle's car on the interstate highway. A truck driver behind him saw sparks flash under a truck traveling next to the young man's vehicle, indicating the truck was dragging something. The truck driver saw Woodard's brake lights go on and then saw an object go "underneath" Woodard's car. Evidently Woodard lost control and drove into the

median for about 100 yards before inexplicably shooting back across the highway and into a clump of trees. The truck-driver witness testified that when the boy's car came to rest, he went to the car and saw a tree limb sticking in the front of the car, and concluded Woodard had been killed by concussion from the tree limb. The evidence varied greatly. There was evidence that the sparks seen by the truck-driver witness appeared to have been caused by a metal object in the road, perhaps a loading ramp similar to a ladder. In any case, a metal "ramp" was found on or at the car after it came to rest. The investigator testified the ramp was leaning on the car when he got to the scene, but it had blood and bits of flesh on it. There was testimony that the object was a loading ramp and might have fallen off a truck. Another witness said he saw the ramp sticking into the car. The appellants on appeal contend this witness was "incredible."

All of this re-arguing of the evidence, upon which the jury has already passed, provides no basis for an appeal. The entire question of fact, and particularly the weight and preponderance of the evidence, are for the jury. On appeal, we construe all evidence most strongly in support of the verdict, for that is what we must presume the jury did; and if there is evidence to sustain the verdict, we cannot disturb it. *McLarty v. Kushner*, 173 Ga. App. 432 (326 SE2d 777).

The appellant insists that the entire cause of death is speculation in this case, and that in fact it might have been *anything* which caused Woodard's death. But if appellant concedes this much, then it might as well have been a metal ramp that had flesh and blood on it and was seen by several witnesses shooting under the car, at the bumper, or leaning on, or in, the car. This must be what the jury concluded, considering testimony that the truck driver saw an object fly from under the other truck and onto Woodard's car, and cause him to lose control. This verdict is well supported by the evidence in this case.

3. The trial court did not err in permitting a witness to testify that if the object in the roadway was a ramp, this would indicate it had fallen from a flat-bed trailer to which it had been improperly fastened. Penney urges error because "there is no evidence in the record that the object which caused sparks to fly from under . . . Woodard's [car] was the loading ramp which [the witness] first saw only after the Ford [came] to rest in a clump of trees."

The ruling in Division 2 herein shows by the evidence that there was plenty of circumstantial evidence that the object which caused sparks to fly from under Woodard's car was the loading ramp which another witness saw only after Woodard's car came to rest. The unlikely coincidence alone, in the precipitating "sparks" and the ramp's presence at the car, is a fact which the jury might give weight; as is the further "coincidence" that a metal ramp was found leaning on or

in the car at a clump of trees beside the interstate, and the further coincidence that the ramp had flesh and blood on it. Perhaps the jury concluded that, whatever struck Woodard's head, it was the ramp which made him lose control and made inevitable his death. These new positings by appellants show the futility and impropriety of re-weighing the evidence after the jury has ruled.

4. The trial court did not err in permitting witnesses Loos and Welch to testify that if the object in the roadway was a ramp, this would indicate that it had fallen from a flat bed or low-boy trailer to which it had been fastened improperly or negligently. Despite appellant's protests that the ramp might have arrived on the spot by other means, the witnesses' opinions fall far short of speculation and are well within the witnesses' expertise, as well as the jury's common sense, according to the weight it is entitled to give circumstantial evidence. If appellant contends, as it obviously does, that the ramp might have come from *anywhere*, then it must concede the possibility and, according to the witnesses, the likelihood, that it fell from a flat bed truck after being fastened insecurely.

5. Penney then argues the trial court erred in charging the plaintiffs' particular request to charge concerning the value of young Woodard's life. These arguments are not well taken. The charge was substantially correct, not incorrect as a matter of law, and did not result in any clear-cut illegal or undue award.

6. Penney made a motion to strike Alton Woodard as a party plaintiff, because the deceased was a child born out of wedlock in 1968; Mrs. Woodard did not marry Mr. Woodard until 1970, and there was allegedly no evidence he was the boy's father by nature, legitimation or adoption. Appellant's arguments concerning the converse right of a biological parent to recover are obviously inappropriate to the facts of this case.

Mrs. Woodard testified: "Darien was the only child we had." Therefore, according to OCGA § 19-7-20 (c), the presumption is that Darien was the legitimate child of Alton Woodard, his reputed father. This enumeration is without merit.

7. Finally, Penney urges the trial court erred in entering a judgment against appellant Penney which included prejudgment interest, pursuant to OCGA § 51-12-14.

Penney's liability for the claim is limited by contract to $100,000, the limit of the policy coverage; but OCGA § 51-12-14 allows prejudgment interest on an amount claimed as unliquidated damages in a tort action. Although this was an action in tort, the extent of liability is governed by the insurance contract. But, applying OCGA § 51-12-14 to this case, where the verdict exceeded the policy limit, we clearly see these damages are *not "unliquidated,"* but by contract were "liquidated" as the ultimate liability for $100,000. Moreover, this fulfills

Penney's entire contract obligation, which this statute cannot increase.

We see no reason to reverse the judgment below, on condition that the trial court should make certain the prejudgment interest awarded against Penney is awarded only to the extent of Penney's liability ($100,000) before final judgment on remittitur.

*Judgment affirmed on condition. Banke, P. J., and Beasley, J., concur.*

DECIDED FEBRUARY 17, 1989 —
REHEARING DENIED MARCH 13, 1989 —

*Hugh F. Newberry, George A. Haas*, for appellant.
*William C. Lanham, Clark H. McGehee*, for appellees.