A89A0526. LENNY'S NUMBER TWO, INC. v. ECHOLS.
(384 SE2d 898)

BIRDSONG, Judge.

Appellant Lenny's No. Two, Inc. ("Lenny's") appeals from the adverse judgment and verdict in a personal injury case arising from an altercation at Lenny's nightclub in which Echols, a patron, was injured. It is not disputed that Lenny's security guards, including one man known as "Rambo," decided that Echols, who was apparently intoxicated, should leave the premises. According to witnesses on Lenny's behalf, Echols was surrounded by four security guards and escorted to the door without physical contact between the security guard and Echols, and without causing a disturbance. According to Lenny's chief of security, when Echols was outside Lenny's, Echols became involved in a sudden confrontation with an unknown patron, who apparently had not been seen before, nor seen since, and who gave Echols a karate kick to the chest which knocked him on his backside. The security guards broke up this altercation, and about this time, the police arrived and took Echols away.

Echols and his witness, Whiting, who is a friend and perhaps a relative of Echols, testified to a different set of facts. According to Echols and Whiting, Echols was standing near the bar when three security guards gathered about him. Rambo stood in front of Echols and the other two stood behind Echols and to either side and grabbed Echols' arms. Then, according to Whiting, Rambo hit Echols in the face with his fist, which had a metallic object in it. Both Echols and Whiting testified that the blow was struck without provocation by Echols.

They also testified that the other security guards kept Echols

from falling to the floor, hustled him to the door, and threw him outside. Whiting also testified that when he then saw the security guards start to beat Echols outside of the club, he intervened, and about this time, the police came. Whiting testified that he saw no one other than Lenny's security guards strike Echols. Both Echols and Whiting testified that Echols' injuries, a fractured skull and ankle, were caused by the actions of Lenny's security guards.

Although Lenny's presented witnesses tending to establish that Echols sustained his injuries other than from the events at Lenny's and caused Echols to admit under cross-examination that he told a nurse at the hospital that he was injured when he fell into a brick wall, the jury returned a verdict for Echols for $100,000 in compensatory damages.

Lenny's now appeals and enumerates as error that the verdict and judgment were defective on the general grounds, the trial court erred by refusing to give several requested charges, and the trial court erred by excluding the medical records showing that Echols told the nurse that he fell into a brick wall. *Held*:

1. Although Lenny's enumerates 11 separate errors, the different enumerations can be grouped by the issues asserted. The first three enumerations of error attack the verdict and judgment on the grounds that both were contrary to the law and the evidence. We have examined the record on appeal and find that the evidence supports the verdict and the judgment. Further, "rearguing of the evidence, upon which the jury has already passed, provides no basis for an appeal. The entire question of fact, and particularly the weight and preponderance of the evidence are for the jury. On appeal, we construe all evidence most strongly in support of the verdict, for that is what we must presume the jury did; and if there is evidence to sustain the verdict, we cannot disturb it. *McLarty v. Kushner*, 173 Ga. App. 432 (326 SE2d 777)." *J. C. Penney Cas. Ins. Co. v. Woodard*, 190 Ga. App. 727, 730 (380 SE2d 282). There being evidence in the record to support the verdict, there is no basis for Lenny's assertions. Further, we find no errors of law which would make the judgment contrary to law. Accordingly, enumerations of error 1, 2, and 3 are without merit.

2. Enumerations of error 4-7 assert that the trial court erred in refusing to give certain defense-requested charges premised on Lenny's assertion that Echols was a licensee at the time of his injury. The charges defined terms, expounded on duties owed a licensee, and provided the test for determining whether one is an invitee or a licensee. Lenny's properly requested the charges in writing and then made the necessary objection when the trial court refused to give the charges requested. The question presented on these charges is whether an issue about Echols' status was raised by the evidence. *In-*

*ternational Brotherhood &c. v. Briscoe*, 143 Ga. App. 417, 427 (239 SE2d 38).

Lenny's contention is based upon the concept that one can have the status of a business invitee originally, but because of changed circumstances the status may change to that of a licensee, or even a trespasser. *Ginn v. Renaldo, Inc.*, 183 Ga. App. 618, 621 (359 SE2d 390); *Armstrong v. Sundance Entertainment*, 179 Ga. App. 635, 636 (347 SE2d 292).

The theory underlying this concept is that a patron is a business invitee only as long as his presence on the premises is of a present mutual benefit to himself and the owner or operator of the establishment. *Savage v. Flagler Co.*, 185 Ga. App. 334, 337 (364 SE2d 52), rev'd in part on other grounds, *Flagler Co. v. Savage*, 258 Ga. 335 (368 SE2d 504). Further, an invitee's presence on the premises may be limited in space or time and, exceeding one's permission in regard to either, can cause one to lose his status as an invitee. *Armstrong v. Sundance Entertainment*, supra.

In the nightclub setting, the change typically occurs when a patron becomes unacceptably intoxicated or otherwise sufficiently offensive so that he is asked to leave. The difficulty in using the concept is deciding the precise point at which the invitee no longer has a present business relationship with the nightclub so that the patron's presence there is no longer of mutual benefit. Among those patrons who are asked to leave, it is not clear that all instantly become licensees merely because they are asked to depart. Even drunken patrons can provide some benefit to the nightclub if they exit peacefully and relatively promptly on request. In such circumstances, other purchasing patrons are less likely to be disturbed or frightened into voluntarily quitting the premises, or to be given a negative impression of the club's business reputation. More importantly, peaceful patron egress significantly reduces the risk of injury to other patrons and club employees during that critical period. Further, as nightclubs are potentially liable for damages caused by drunken patrons after they leave the premises (see *Sutter v. Hutchings*, 254 Ga. 194 (327 SE2d 716)), it can be to the nightclub's benefit for the patron to remain on the premises until a safe means for his departure is obtained.

From the testimony of Echols and Whiting, no issue is created that Echols was anything other than an invitee. Indeed, Echols testified that he was not even asked to leave before he was struck in the face.

Even if we study only the testimony of Lenny's witnesses, the evidence still does not create an issue about Echols' status. According to Lenny's chief of security, he had noticed Echols earlier and recognized that he was intoxicated, but did not feel the need to ask him to leave. Then, when a complaint was received that Echols had allegedly

touched improperly one of the male dancers, Echols was asked to leave and was *escorted* without incident of physical resistance or violence from the nightclub by four of Lenny's security guards. When outside on Lenny's sidewalk, Echols was attacked unexpectedly by another patron. This testimony, however, does not suggest the conclusion that Echols' presence at Lenny's was not pursuant to a continuing present business relationship with Lenny's. Indeed, during egress, Echols was under the informal custody and actual control of Lenny's security chief and was still in the immediate presence of Lenny's security and at the location on Lenny's property in which he was placed by them when attacked. In the totality of the attendant circumstances, we do not find that asking Echols to leave was sufficient to change automatically Echols' status to that of a licensee or create a jury issue on that question.

For reasons indicated above, it is not too much to expect that the proprietor who contributed to a patron's drunken condition by serving him alcoholic beverages will continue to have a mutual business relationship with the patron until such time as the patron safely and relatively promptly leaves the premises, or otherwise physically resists the authority of the proprietor over the premises sufficiently to establish conclusively that the status as an invitee has been withdrawn. In *Sun v. Bush*, 179 Ga. App. 80 (6) (345 SE2d 85), we held "[i]t is not error for the trial court to refuse . . . to charge on principles of law not applicable to the case." Accordingly, we do not find that the testimony raises the issue of Echols' status as a licensee, and, therefore, it was not error for the trial court to refuse to give requested charges numbers 16, 17, 18, and 19 as asserted in enumerations of error 4-7.

3. Enumeration 8 asserts that the trial court erred by refusing to charge that Lenny's could not be found liable if the jury found that the altercation and injury happened suddenly and without warning, and that the owner could not through the exercise of ordinary care have discovered or prevented the assault on Echols. The record shows that the trial court gave another charge, also requested by Lenny's, that "the law does not impose a duty on a person to guard against sudden, unforeseen and not reasonably to be anticipated acts of another person." This charge amply instructed the jury on the matters also requested by Lenny's in requested charge no. 20. A party is not entitled to have all of his requested charges given merely because he requests them. Here, the principle covered in the requested charge was encompassed elsewhere in the charge to the jury, and there was no error not to give the same principle again. *Church's Fried Chicken v. Lewis*, 150 Ga. App. 154, 160 (256 SE2d 916).

4. In enumeration 9 Lenny's contends the trial court erred by refusing to charge that a proprietor has no obligation to save a business invitee from an assault arising from the assailant's personal malice

toward the victim. The requested charge is based on this court's decision in *Shockley v. Zayre of Atlanta*, 118 Ga. App. 672, 674 (165 SE2d 179). In that case the plaintiff was attacked in a store by another customer with whom she had apparently been having a longstanding dispute about matters unrelated to any occurrence on the store's premises. We held that we were aware of no authority requiring the store, under those facts, to intervene to protect the victim. There is no evidence that any of the conditions in the *Shockley* case existed in the present case. Accepting arguendo the allegation that Echols was injured by another patron, there is no evidence that the attack was the result of any personal malice which developed other than while Echols was a business invitee of Lenny's. Further, extended beyond its facts, the statement from *Shockley* v. *Zayre*, supra, would relieve proprietors from any liability for attacks by patrons on others, no matter how reasonably the attack might have been anticipated. Consequently, the better rule appears to limit the principle established in *Shockley v. Zayre* to instances involving those unusual facts. Further, this court has again recently recognized that a proprietor has a general duty to protect patrons from foreseeable attacks by employees or other patrons. *Overground Atlanta v. Dunn*, 191 Ga. App. 188 (381 SE2d 137). As a business invitee, Echols would be entitled to be protected by Lenny's security force from assaults by other patrons if, through the exercise of ordinary care, the assault could have been reasonably anticipated and prevented. *Veterans Organization v. Potter*, 111 Ga. App. 201 (141 SE2d 230); *Adamson v. Hand*, 93 Ga. App. 5, 8 (90 SE2d 669). Accordingly, refusal to give the requested charge was not error.

5. Lenny's final enumeration concerns the trial court's refusal to admit into evidence as a prior inconsistent statement a statement in medical records that Echols made to a nurse that he was injured when he fell into a brick wall. The transcript reveals that on cross-examination, Echols admitted making the statement contained in the records. A prior inconsistent statement of a witness is admissible as substantive evidence, *Gibbons v. State*, 248 Ga. 858 (286 SE2d 717); c.f., *Harden v. State*, 166 Ga. App. 536 (304 SE2d 748), but it was not reversible error for the trial court to exclude the records in this case because Echols admitted under oath on the witness stand that he made the statement. Therefore, there was no harm to the appellant. *Transamerica Ins. Co. v. Smith*, 147 Ga. App. 574 (249 SE2d 663).

The appellant's enumerations of error all being without merit, the judgment of the trial court should be affirmed.

*Judgment affirmed. Deen, P. J., and Benham, J., concur.*

376

*Lokey & Bowden, Peter K. Kintz, David N. Baker,* for appellant.
*Pashley & Grossman, Bruce E. Pashley, Leonard B. Grossman,*
for appellee.