A96A0897. PLOOF TRUCK LINES, INC. et al. v. BENNETT.
(472 SE2d 552)

McMURRAY, Presiding Judge.

Plaintiff Rose Thurmond Bennett brought this tort action against defendant Ploof Truck Lines, Inc. ("Ploof") and Ploof's insurer, Protective Insurance Company ("Protective"), seeking to recover for personal injuries she sustained when her vehicle collided with an 18-wheel tractor-trailer that was "negligently making a U-turn in the middle of the roadway," at approximately 5:55 p.m. on December 6, 1991. According to the complaint, as plaintiff approached where the tractor-trailer was making a U-turn, "she was unable to see it due to the way it was positioned in the road, and, therefore, was unaware of the presence of said truck until it was too late for her to take evasive action." Ploof's attempted U-turn was allegedly negligence per se for violating OCGA § 40-6-121 (3). Ploof and Protective answered, admitting only that a Ploof employee was operating a White tractor in the course and scope of his employment at the time and place of the collision, but denying all material allegations. During discovery, however, defendant Ploof stipulated that its

former employee "Johnny Richard Buffington was travelling north on Georgia Highway 17. Buffington attempted to turn around to go south from the east shoulder of Highway 17. Buffington could not complete the turn without backing up his trailer into the northbound lane. At that time, the plaintiff was travelling in the northbound lane of said highway, approaching Buffington from the south. The left front corner of the Plaintiff's vehicle struck the rear of the trailer of [Ploof's] vehicle in the northbound lane of said highway."

The case was tried before a jury which found for plaintiff, awarding her $124,058, after a reduction of 17 percent attributable to plaintiff's own negligence. Defendants appeal from the judgment entered on the jury's verdict. *Held*:

1. Defendants first enumerate the failure of the trial court to give their written request to charge, "number 16, which read: I charge you that the duty to exercise ordinary care includes the duty to drive defensively." See *Plyler v. Smith*, 193 Ga. App. 114, 115 (2) (b) (386 SE2d 881). They argue this instruction was adjusted to evidence that plaintiff perceived the tractor-trailer ahead of her but decided to try and drive around the rear. Defendants further argue that their request was not otherwise covered by the general charge. We disagree.

"A party is not entitled to have all of his requested charges given merely because he requests them." *Lenny's Number Two v. Echols*, 192 Ga. App. 371, 374 (3) (384 SE2d 898). In the case sub judice, the trial court's charge did contain the following instruction: "[E]very person has a duty to exercise ordinary care for their own safety. If you should determine from the evidence that the plaintiff in this case failed to exercise ordinary care for her own safety, and that this failure on her part was the proximate cause of her injuries, then she, the plaintiff, could not recover. It's the duty — it would have been the duty of the plaintiff on this occasion to maintain a diligent lookout ahead as she drove on the highway. And if, by the exercise of ordinary care, she could have avoided the consequences to herself caused by the negligence of the defendant, then again, she would not be entitled to recover." The duty to avoid the consequences of the defendant's negligence was subsequently mentioned two more times. "The jury was otherwise instructed on the legal [principle] contained in [defendants'] refused [request] to charge. Accordingly, the failure to give [that] refused [request] was not error. *Lenny's Number Two v. Echols*, 192 Ga. App. 371, 374 (3)[, supra]." *Daniel v. Parkins*, 200 Ga. App. 710, 713 (7) (409 SE2d 233).

2. Next, defendants enumerate the giving of the following instruction: "One who is rightfully using the highway or street has a right to the use of it which is superior to that of one who is violating traffic regulations, and in the absence of knowledge, is not required

to anticipate that some other user will unexpectedly violate the law or one of these rules of the road, and create a situation of danger." Defendants concede that this instruction is an accurate statement of the law. See *Plyler v. Smith*, 193 Ga. App. 114, 115 (2) (b), supra. They nevertheless argue that this instruction was not adjusted to the evidence, because plaintiff affirmed on cross-examination that since the dark spot in front of her "could be neither [a hill nor a curve], [she], at that point in time figured out that there was something wrong." In our view, however, this evidence does not amount to a binding admission that plaintiff knew of and fully appreciated the dangerous circumstances posed by the tractor-trailer's proceeding with its unlawful U-turn. Plaintiff had earlier affirmed, in response to questions posed by the trial court, that "had . . . that truck [not] backed up, [she] would have been able to have gotten around that truck with no problem." Consequently, the trial court's instruction was adjusted to the evidence. This enumeration is without merit.

3. In their final enumeration, defendants contend the trial court erred in failing to use a "proper" verdict form.

Defendants submitted no written proposed verdict or any pre-trial order. The trial court instructed the jury to return a general verdict, i.e., "we, the jury, find for the plaintiff in the sum of blank dollars. Where I've used the term blank, you of course would insert such sum in dollars and cents as you think she's entitled to recover. If you do not think she's entitled to recover, you should find for the defendants and the form of your verdict would be: we, the jury, find for the defendants." In response to a question from the jury, defense counsel argued that the jury "can [both] render a verdict and make a suggestion," as to certain medical costs for which the United States might be entitled to reimbursement. The jury's verdict, in addition to making an award reduced by plaintiff's comparative negligence, further "suggest[ed] that Eisenhower Hospital's bill be debated by [plaintiff's] counsel since failure to detect a break and properly treat [plaintiff's] knee contributed directly to [her] fall of April 9th, 1992. [SIGNED] Robert W. Gardner, Foreperson." In response to direct inquiry by the court whether counsel had "any questions as to the form of the verdict[, defense counsel replied:] No, sir."

" 'If the form of the verdict was improper, it was incumbent upon [defendants] to make [their] objections as to irregularity of form at the time of its rendition or otherwise such technicality is waived. *Golosky v. Wherle*, 117 Ga. App. 335 (160 SE2d 614). This is so because a verdict may be reformed or remodeled in the presence of the jury before they have retired from the box. *Herndon v. Sims*, 7 Ga. App. 675 (3) (67 SE 835). See also *Ga. R. &c. Co. v. Tompkins*, 138 Ga. 596, 603 (75 SE 664).' *West Ga. Pulpwood & Timber Co. v. Stephens*, 128 Ga. App. 864, 869 (3), 870 (198 SE2d 420)." *Harrison v.*

*Martin*, 213 Ga. App. 337, 344 (2) (444 SE2d 618). In the case sub judice, defendants waived any valid exception to the form of the verdict by failing to urge it before the jury was dismissed. Consequently, this enumeration presents nothing for review.

*Judgment affirmed. Johnson and Ruffin, JJ., concur.*

DECIDED JUNE 20, 1996.

*Glover & Blount, Percy J. Blount*, for appellants.

*Burnside, Wall, Daniel, Ellison & Revell, Thomas R. Burnside, Jr., Thomas R. Burnside III*, for appellee.