A96A2117. BROCK v. DOUGLAS KOHOUTEK, L.P.
A96A2118. HIGHLAND GROVE, L.P. et al. v. DOUGLAS
KOHOUTEK, L.P.

(483 SE2d 342)

JOHNSON, Judge.

Douglas Kohoutek, L.P. sued Highland Grove, L.P., three corporations that were partners in Highland Grove, and the presidents of those corporations. Kohoutek contended the Highland Grove partners had twice improperly amended their partnership agreement, resulting in Kohoutek being deprived of profits it would otherwise have received when Highland Grove sold its assets.

Kohoutek was not itself a Highland Grove partner, but had a security interest in the economic rights flowing to defendant Grove Development, Inc. ("GDI") from GDI's partnership interest in Highland Grove. GDI was a wholly owned subsidiary of Grove Properties, Inc., whose president was defendant Milton Brock. In Case No. A96A2118, all the defendants except Brock appeal from the jury verdict in Kohoutek's favor. Brock, who was pro se at trial, retained counsel to handle his motion for new trial and separate appeal, Case No. A96A2117. In both appeals, we affirm.

A brief overview of the facts, the parties' contentions, and the jury's findings will be helpful before we reach specific enumerations of error. Highland Grove was engaged in the development and construction of an apartment complex in Gwinnett County. Each challenged amendment to the Highland Grove partnership agreement

reduced GDI's percentage of ownership interest in Highland Grove. Kohoutek claimed the reductions diminished the value of its collateral and were not commercially reasonable or made in good faith, and were therefore prohibited by both its security agreement and OCGA § 11-9-318 (2). This statute provides that when the right to payment under an assigned contract has not been fully earned by performance, "any modification of or substitution for the contract made in good faith and in accordance with reasonable commercial standards is effective against an assignee [here, Kohoutek] unless the account debtor [Highland Grove] has otherwise agreed."

The defendants maintained the amendments saved Highland Grove from insolvency, and that without them Kohoutek's interest in Highland Grove, in any percentage, would have been worthless. They also claimed to have acted in good faith and with commercial reasonableness.

All defendants except Brock made oral motions for directed verdict, which the trial court orally granted as to a fraud cause of action, but otherwise denied. The case was then submitted to the jury on a verdict form to which no party objected. The jury found that: (1) The security agreement prohibited both amendments. (2) GDI and Brock did not act in good faith and with commercial reasonableness in entering into the first amendment, but the other defendants did. (3) None of the defendants acted in good faith and with commercial reasonableness in entering into the second amendment. (4) Kohoutek should be awarded actual damages of $575,000 and no punitive damages.

The court entered judgment against all defendants jointly and severally for $575,000. No questions were submitted to the jury before they were discharged. All defendants later filed written motions for j.n.o.v. or, in the alternative, new trial, which were denied.

1. All defendants contend the trial court erred in denying their motions for directed verdict and j.n.o.v. because Kohoutek's security agreement allowed the amendments to the partnership agreement.[1] A motion for directed verdict should be granted only if there are no conflicts in the evidence on any material issue and the evidence demands a particular verdict. *Danfair Properties v. Bowen*, 222 Ga. App. 425, 426 (474 SE2d 295) (1996); see OCGA § 9-11-50 (a). The standard for j.n.o.v. is the same, and appellate review of a trial court's ruling on a motion for j.n.o.v. or directed verdict is under the "any evidence" standard. See *Rockdale Body Shop v. Thompson*, 222 Ga. App.

---

[1] Kohoutek perfected its security interest by filing a UCC-1 statement in September 1990, which was after the first amendment but before the second. No party has raised any issues relating to the timing or substance of the perfection.

821, 822 (1) (476 SE2d 22) (1996); see *Danfair Properties*, supra.

The critical language in the security agreement prohibited partnership amendments that would "materially diminish the value of the Collateral." The Highland Grove appellants concede the challenged amendments reduced GDI's *percentage* of ownership. However, they contend the amendments allowed new investors with cash and new collateral into the partnership, which allowed Highland Grove to restructure its debt on favorable terms and prevent foreclosure of its principal asset. The Highland Grove appellants claim the amendments therefore increased the *dollar value* of GDI's share, which otherwise would have been worthless, and so did not violate the security agreement.

Putting aside for the moment whether the contested language in the security agreement prohibited a percentage reduction in GDI's ownership interest, it is salient to note that no one objected to the verdict form. The form merely asked the jury whether the security agreement prohibited the first and second amendments, and said that in answering this question, they "should consider" whether the amendments diminished the collateral's value. The jury's complete answer: "Yes." This could mean they found *either* that the contract did not allow GDI to reduce its percentage share of Highland Grove, *or* that the amendments decreased the dollar value of GDI's share.

If the verdict could be sustained under either interpretation, the trial court was bound to sustain it, as are we. "Verdicts shall have a reasonable intendment and shall receive a reasonable construction. They shall not be avoided unless from necessity." OCGA § 9-12-4. "Even if the verdict is ambiguous and susceptible of two constructions, one of which would uphold it and one of which would defeat it, that which would uphold it is to be applied." (Citations and punctuation omitted.) *Harrison v. Martin*, 213 Ga. App. 337, 344 (1) (444 SE2d 618) (1994). For reasons that follow, both interpretations of the verdict are sustainable.

First, even if we were to agree with the Highland Grove appellants that the security agreement can only be construed to prohibit a dollar value reduction, there is some evidence the first and second amendments decreased the dollar value of GDI's share in Highland Grove. The jury was authorized to put its own value on GDI's share before and after each amendment, based on the following evidence (see *Sanders v. Robertson*, 196 Ga. App. 739, 740 (1) (397 SE2d 26) (1990)): (1) Financial reports as of December 31, 1989; May 31, 1990; December 31, 1990; and testimony regarding what information was missing from those reports, and Highland Grove's financial condition between the July 1990 and December 1990 amendments. (2) Testimony about Highland Grove's untapped marketing potential. (3) Brock and GDI's release, obtained in connection with one of the

amendments, from their guaranty of Highland Grove's loan. The jury could infer that GDI gave up something of value in order to obtain this release, which absolved Brock and GDI from secondary liability for approximately $9.6 million in debt (net), and enabled them to pay off two other mortgages and generate $65,000 for other purposes.

Second, there is also evidence to support a construction of the security agreement prohibiting a percentage reduction in the circumstances before us: The fact that the agreement specifically allowed reduction of the partnership interest in *other* circumstances.

Ordinarily, a contractual ambiguity should be submitted to the jury only to ascertain the parties' intent if the court cannot resolve the ambiguity by applying the rules of construction. *Duke v. KHD Deutz of America Corp.*, 221 Ga. App. 452, 453 (471 SE2d 537) (1996); *Century 21 &c. v. Cason*, 220 Ga. App. 355, 358 (2) (d) (469 SE2d 458) (1996); see generally OCGA §§ 13-2-1; 13-2-3. The Highland Grove appellants, however, did not invoke a ruling by the court on the contract's meaning. They could have done so by making sure their construction was expressed in the charge or verdict form, and objecting if it was not. Because they did not do so, they cannot now complain of the jury being allowed to construe the contract. See generally *Le Twigge, Ltd. v. Wammock & Co.*, 187 Ga. App. 446, 448 (370 SE2d 631) (1988).

There was some evidence to support a finding that the amendments violated the security agreement. The security agreement therefore did not require the trial court to grant the appellants' motions for directed verdict or j.n.o.v.

2. Brock and the Highland Grove appellants claim that, regardless of the terms of the security agreement, the partnership amendments were authorized by OCGA § 11-9-318 (2). This statute, they contend, provides a separate ground on which the trial court should have granted them a directed verdict or j.n.o.v. As mentioned above, OCGA § 11-9-318 (2) allows modifications of assigned contracts if, among other things, the modifications are commercially reasonable and made in good faith. " 'Good faith' means honesty in fact in the conduct or transaction concerned." OCGA § 11-1-201 (19). When there is some evidence a party acted in bad faith, the issue is for the jury. *Crosson v. Lancaster*, 207 Ga. App. 404, 407 (4) (427 SE2d 864) (1993). Whether reasonable commercial standards have been met is also a question of fact for the jury. *Tifton Bank &c. Co. v. Knight's Furniture Co.*, 215 Ga. App. 471, 474 (1) (b) (452 SE2d 219) (1994). Good faith and compliance with reasonable commercial standards are separate requirements, both of which must be shown to establish a defense under the statute. See generally *Trust Co. Bank &c. v. Henderson*, 185 Ga. App. 367, 370 (1) (364 SE2d 289) (1987) (construing another, similarly worded Uniform Commercial Code statute).

In the case before us, the following evidence supports the jury's findings of bad faith or commercial unreasonableness: (1) As discussed above, Brock and GDI obtained a release from a guaranty of over $9 million in debt in connection with one of the amendments. (2) Brock conceded that in 1990 he knew that, whatever GDI's Highland Grove interest was, the value of that interest was unlikely to exceed GDI's debt to Kohoutek. From this the jury could infer that GDI had no financial motivation to protect its Highland Grove interest. (3) All defendants knew of Kohoutek's security interest for a month before the second amendment was signed, yet did not communicate with Kohoutek. The jury could infer from Brock's testimony that the defendants did not notify Kohoutek because they knew Kohoutek would object. (4) In connection with the second amendment, the defendants entered into an "Agreement Regarding Curative Actions" purporting to govern their duties to each other in the event that Kohoutek contested the amendments. (5) Kohoutek presented evidence that Highland Grove's financial problems were not as severe as the defendants claimed, nor the amendments as beneficial: (i) Though the bank was threatening to foreclose on Highland Grove's chief asset, no actual foreclosure had been initiated; and this same bank had threatened foreclosure on several of Brock's other projects in the past, but had never foreclosed on any of them. (ii) The second amendment added no new funding to Highland Grove beyond payment of some materialmen's liens, and Highland Grove never borrowed any money after the second amendment. (iii) Though the defendants claimed that an interest arrearage created great pressure for the second amendment, the bank ultimately did not insist on payment of the arrearage.

Though the evidence showing good faith and commercial reasonableness is quite substantial, there is some evidence of bad faith or commercial unreasonableness. Whether the defendants violated OCGA § 11-9-318 (2) was therefore properly left to the jury. See generally *Danfair Properties*, supra, and *Rockdale Body Shop*, supra. We need not reach the question of whether the security agreement could prohibit the amendments even if the statute allowed them.

3. In two related enumerations of error, the defendants claim the court erred in denying them a new trial because the damages verdict was inconsistent with the jury's other findings and unsupported by the evidence. The basis of this claim is the lack of any specific evidence that Kohoutek was damaged in the amount of precisely $575,000, and the defendants' speculation that the jury reached this figure by enforcing some, but not all, of the terms of the second partnership amendment.

This argument fails because of the form of the verdict, which did not require the jury to specify how it reached its damages figure. In

the absence of a verdict form requiring more specificity, "[t]he method by which a jury reaches a particular verdict is not a matter of which this court can take judicial cognizance." (Citation and punctuation omitted.) *McGill v. Precision Press*, 130 Ga. App. 546 (203 SE2d 764) (1974). If the defendants desired an explanation of the basis for the damage award, they should have objected to the verdict form, which allowed the jury free rein to set damages. See *Southern Crate &c. v. McDowell*, 163 Ga. App. 153, 155 (3) (293 SE2d 541) (1982). Their failure to do so while the jury was still present and available to reform the verdict waived any objection. See *Ploof Truck Lines v. Bennett*, 221 Ga. App. 789, 791 (3) (472 SE2d 552) (1996).

Moreover, where there is some evidence to support the verdict, the grant or denial of a new trial on evidentiary grounds is within the trial court's discretion. See OCGA § 5-5-21; see generally OCGA § 51-12-12 (a). Unless there is no evidence to support the verdict, we will not find that discretion abused. See *Mansfield v. Pizza Hut &c.*, 202 Ga. App. 601, 602 (415 SE2d 51) (1992). Because Kohoutek asked for over $1 million in damages, and put on some evidence to support that request, these enumerations of error are without merit.

4. The final enumeration of error is asserted only by Brock, who contends the trial court should have granted his motion for j.n.o.v. or new trial because his debt to Kohoutek had previously been discharged in bankruptcy.

When Brock's newly hired counsel supplemented his motion for new trial, they raised the bankruptcy defense for the first time. Brock contends the only reason he did not raise the discharge as a defense at trial is that he was pro se and did not realize he could raise it. Though Brock mentioned at trial that he had filed for bankruptcy protection, he never stated a case number, jurisdiction, type of bankruptcy, or whether he obtained a discharge, and never said the bankruptcy covered Kohoutek's claim in this case. We note that the trial judge informed Brock early in the trial that discharge in bankruptcy was an affirmative defense that did not appear to have been raised.

Discharge of a debt in bankruptcy is an affirmative defense, and Brock did not plead it or introduce a copy of the order of discharge, as required by *Commercial & Exchange Bank v. McDaniel*, 147 Ga. App. 378, 379 (249 SE2d 97) (1978). "In a civil case the court cannot put a pro se litigant on a different standard from one represented by counsel." (Citation and punctuation omitted.) *Howell v. Styles*, 221 Ga. App. 781, 783 (2) (472 SE2d 548) (1996). This enumeration of error is also without merit.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MARCH 4, 1997.

*Hassett, Cohen, Beitchman & Goldstein, Jeffrey A. Bashuk, Daniel S. Glickman*, for appellant (case no. A96A2117).

*Smith, Gambrell & Russell, David C. Newman, Bruce D. Cohen*, for appellants (case no. A96A2118).

*Lynn S. McNeese*, for appellee.