## SOUTHERN EXPRESS COMPANY *v.* B. R. ELECTRIC COMPANY.

1. Under the general law embodied in the Civil Code, § 2004, every express company doing business in this State is subject to suit for a failure to perform its public duties as a common carrier, either in the county where goods are received for shipment, or in the. county where delivery of the goods was directed to be made. This is true notwithstanding provision be made in a special charter granted to a particular company that it shall be liable to suit in any county wherein it may tortiously injure the person or property of another, or where any contract to which it is a party may be made or is to be performed. And were this otherwise, it would be too late, after verdict, to question the jurisdiction of a court which was competent to deal with the subject-matter of a suit against a company which voluntarily appeared and made defense.

2. The superintendent of a municipal electric lighting plant has, in the absence of authority to deal with the public in behalf of the municipality, no implied power to accept for it a shipment of electrical apparatus, not consigned to him or the municipality.

3. It is not incumbent on a plaintiff, after the defendant has failed to make out a prima facie defense, to offer any counter evidence to that upon which he relies; and therefore the rule that an unfavorable inference may be drawn against a party who fails to produce available proof has no application.

Argued June 3,—Decided August 13, 1906.

Complaint. Before Judge Reid. City court of Atlanta. December 2, 1905.

According to the allegations of the petition filed in this case, the B. R. Electric Co., on November 25, 1903, delivered to the Southern Express Company a certain shipment of the value of $214, addressed to the Elberton City E. L. Co., Elberton, Ga.; but the express company did not make delivery of the shipment to the consignee, and upon subsequent demand of plaintiff, made in Atlanta, Ga., failed and refused to return the property of the plaintiff or to pay the value of the same. The defendant filed an answer making a general denial of the allegations upon which the plaintiff relied for a recovery. At the trial a salesman of the plaintiff company testified that the shipment consisted of several "transformers" and some other electrical apparatus which he had sold to a man who, according to his recollection, gave his name as Pearson, and represented himself as being connected with the Elberton City Electric Co. This man, the witness stated, mentioned that a car-

nival was to take place in Elberton, said the electric-light plant at that place was being overhauled, and the goods ordered were to be used in furnishing light for the carnival. The fact was developed by another witness that the only electric-lighting plant in Elberton was owned by the city and was under the supervision of G. W. Hubbard, the city's electrician, and his assistant, J. P. Cleveland, neither of whom authorized any one to purchase the apparatus. There was, in point of fact, no corporation or association known as the Elberton City Electric Light Company, and the city did not conduct its lighting plant under that name. The Robinson Carnival Co., of which one Pierce was the representative, was engaged by the Daughters of the Confederacy to give a carnival in that city, and the apparatus ordered from the plaintiff was used in furnishing light for the occasion; but this was not done under the direction or with the sanction of the municipal authorities, who had merely agreed with the promoters of the enterprise to furnish the power for the lights and were under no obligation to secure any additional apparatus which might be needed. The shipment arrived in Elberton during the night of November 25. The local agent at that point testified that on the following morning he inquired of Hubbard, the city electrician, where he wished the apparatus to be placed; that he replied he had other business to look after, but that Mr. Cleveland would be on hand to show the agent where to put it; that the apparatus was hauled on an express wagon to the public square, where Cleveland was found, who pointed out the place where he wished the apparatus delivered and who assisted in unloading it; that the express charges had previously been paid by the treasurer of the carnival company, who, on being asked where he wished the shipment delivered, had replied that Mr. Hubbard would show where it was wanted; that nothing was said about the ownership of the apparatus, and it was left with Cleveland upon the public square, neither he nor any one else receipting for the shipment. The city electrician, on the other hand, denied that he had told the local express agent that Cleveland would point out the place where the apparatus was needed; and further testified that he, upon being informed by the agent that the transformers had arrived, told him they had not been ordered by the city and he was not expecting any such shipment. The apparatus was used by the carnival company for several nights and was

shipped away by that company when it took its departure from the city. Some time afterwards, but before suit, demand for a return of the shipment was made by a representative of the plaintiff upon the superintendent of the express company, at his office in the City of Atlanta.

In submitting the case to the jury, the trial judge left them to determine the question whether or not it was within the scope of the authority of Hubbard, as superintendent of the electric-power plant, to receive the shipment, and instructed them that should they conclude as matter of fact that he had such authority and that delivery was made to him or some one else for him, upon his order, the delivery of the shipment so made would discharge the defendant company from liability; but that this would be otherwise if he had no authority to receive the shipment, or it was not in fact delivered to him or upon his order. The only direct evidence touching the extent of his authority with respect to this particular shipment was his own testimony, during the course of which he stated most positively that he had no authority from the City of Elberton to direct the agent of the Southern Express Company to deliver any part of the shipment to any one, and had no right to give any one else authority to receive the shipment. What were his precise duties or what powers he exercised as city electrician and superintendent of the municipal lighting plant does not appear. The jury returned a verdict in favor of the plaintiff, and the case comes to this court upon exceptions taken to the overruling of a motion for a new trial made by the defendant.

*DuBignon & Alston,* for plaintiff in error, cited, on agency: Civil Code, §§ 1861, 3023; *Ga. R.* 122/20, 700; 112/782; 111/464; 100/86; 77/409; 75/289; 71/106; 54/635; 37/688; 38/37; Thomp. Corp. § 4853; 10 Cyc. 932; Reinhard, Ag. § 192; Dill. Mun. Corp. (4th ed.) 101, 322, 517; Smith, Mun. Corp. § 1671; 14 R. I. 655; 115 Ill. 230; 24 Fed. 348. Jurisdiction: *Ga. R.* 120/286; 114/-242; 69/763; 68/644; 53/499.

*Walter T. Colquitt,* contra, cited, inter alia: 46 N. E. 39; 27 Mo. App. 132; 1 Am. & Eng. Enc. L. 1002.

EVANS, J. (After stating the facts.)

1. The plaintiff's petition was framed under a general law which provides that "The court sitting in the county where goods are received for shipment, or where goods are to be delivered, shall have

jurisdiction over all express companies, which now do or may hereafter do business in this State, and the judgment shall bind all the property of said companies." Civil Code, § 2004. This general law was of force when, in 1886, the Southern Express Company was granted a charter which provided that suits against it might be commenced and served in the same manner as suits against railroad companies could then be instituted. Acts of 1886, p. 209. After the defendant company had taken its chances for a favorable verdict, it for the first time sought, by its motion for a new trial, to raise the point that it could not be sued in Fulton county for a conversion which took place in Elbert county. By accepting its special charter the express company subjected itself to suit, in common with railroad companies, in any county wherein it might tortiously injure the person or property of another, or where any contract to which it was a party was made or was to be performed. Code of 1882, § 3406. But the company was not relieved of its liability, under the existing general law, to be sued for a failure to perform its public duties as a carrier, either in the county where goods might be received by it for shipment or in the county where the goods were to be delivered to the consignee. Furthermore, the defendant should have raised the question as to jurisdiction before verdict, as it had full opportunity to do by a motion to dismiss the action after it appeared from the evidence that the plaintiff relied for a recovery upon a conversion occurring in the county where delivery of the shipment was to have been made. *Mitchell v. Andrews,* 94 *Ga.* 612; *East Tenn. Ry. Co.* v. *Suddeth,* 86 *Ga.* 388; *McGahee* v. *Lumber Co.,* 112 *Ga.* 513; *Campbell* v. *Mercer,* 108 *Ga.* 106. The court certainly had jurisdiction of the subject-matter of the suit, and it was competent for the express company to waive jurisdiction of the person, as it effectually did. The provisions of the act of 1892, now embodied in the Civil Code, § 2334, to the effect that a judgment against a railroad company "shall be utterly void," if rendered in any county other than that in which the cause of action originated, have not, of course, any application to the present case, since the charter of the Southern Express Company referred to the law of force at the time it was granted.

2. It is inferable from the testimony adduced on the trial that the person who ordered the goods from the plaintiff was Pierce (or Pearson), the agent of the carnival company, who fraudulently rep-

resented that he was connected with the "Elberton City Electric Co." The municipal authorities of Elberton authorized no one to purchase any apparatus to be used during the proposed fête. The shipment was directed to the "Elberton City Electric Light Co." There was no company of that name in Elberton, and the local agent at that place was not warranted in assuming that the apparatus had been ordered by the municipal authorities and was intended to be used by them in connection with the city's electric light plant. He nevertheless undertook to make delivery to the assistant of Hubbard, the city's electrician, who was the superintendent of its power plant. That the superintendent had no actual authority to receive the shipment, or direct its delivery to any one else, was shown by his positive and uncontradicted testimony. Counsel for the plaintiff in error insist, however, that it was within the apparent scope of the authority of this superintendent to receive the shipment in person or to direct to whom it should be delivered. He was a public official, and the company's agent knew him as such. "In dealing with public agents, every person must take notice of the extent of their powers at his peril." *Laing* v. *Americus,* 86 *Ga.* 758. The general rule that a private corporation will be bound by the acts of an agent within the apparent scope of his authority does not apply to the acts of a public agent of a municipal corporation, whose authority is fixed by law. 1 Dill. Mun. Corp. (4th ed.) § 445; 1 Smith, Mun. Corp. § 250. The act of the General Assembly authorizing the City of Elberton to construct and maintain an electric-light plant provided that, after its construction, the council should "employ some competent person or persons to operate the same." Acts of 1890-91, vol. 2, p. 531. Upon the council itself was conferred the power to purchase all necessary machinery, dynamos, wires, and all other implements and appliances for the construction and operation of its system of electric lights, and merely the physical operation of the plant was to be confided to some official or officials competent to take charge of and manage the machinery and appliances to be furnished in the first instance and afterwards from time to time supplied by council. It was clearly not within legislative contemplation that the person or persons selected to "operate" the plant should supplant council in attending to the financial affairs of the enterprise, or have any power to contract in behalf of the city, or have any deal-

ings with third persons concerning the project. Only council had the power to purchase any needed electrical apparatus or to direct to whom shipments intended for the use of the municipality should be delivered. So far as appears, council had never held out the superintendent or his assistant as an agent authorized to deal with the public in any way, nor in any manner led the representatives of the Southern Express Company into the belief that either had power to bind the city by accepting and receipting for goods consigned to the municipality upon order of its governing officials or otherwise. To hold that Hubbard, the city's electrician, had implied authority to bind the city by accepting delivery of goods intended for its use would be to declare that the municipality became liable to pay the B. R. Electric Company for the shipment in question, notwithstanding the municipal authorities did not order the shipment, did not know the circumstances under which the apparatus had been purchased, and had no opportunity of declining to accept the shipment, or to explain that it was not intended for use by the city in connection with its lighting plant. Clearly the city could not be sued in assumpsit for the value of the apparatus, upon the idea that any official having authority to bind it by his acts had taken possession of the property and had devoted it to the use and benefit of the city. The record shows that the carnival company assumed control over the apparatus, used it during its engagement in the city, and fraudulently shipped the property away before it could be reclaimed by the plaintiff company. Even had the shipment been sent to the city as consignee, directed to it in its appropriate corporate name, the local express agent would have been unwarranted in making delivery to any city official who had not been by council expressly authorized to accept the shipment in behalf of the municipality, or who had previously been held out to the public as its duly accredited agent to attend to such matters. The charge of the court touching the apparent authority of Hubbard to accept the shipment or direct to whom it should be delivered was more favorable to the defendant company than it had any right to expect.

3. The assistant superintendent, Cleveland, who directed the local express agent where to unload the apparatus, was not called as a witness by either side, nor shown to be inaccessible. Upon this circumstance the defendant based a request to charge the jury

as follows: In "arriving at the verdict in this case, you must take into consideration facts proved, and you must consider the absence of counter evidence, if there be any such, for the purpose of inferring the existence or non-existence of other facts reasonably and logically consequent on those proved.". The rule of evidence which the defendant thus sought to invoke is stated somewhat more mildly in the Civil Code, § 5157. Obviously it had no application to the facts of the present case, since the defendant did not make out a prima facie defense which the plaintiff was under any necessity of attempting to meet, either by introducing Cleveland as a witness to disprove the statements of the express agent and others as to the circumstances attending the attempted delivery of the shipment, or by producing any other available counter evidence. In fact, under the evidence submitted, a verdict in favor of the plaintiff was practically demanded, and there was no occasion for confusing the jury by giving the charge requested.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*