A90A2217, A91A0229. FABE v. FLOYD (two cases).
(405 SE2d 265)

BIRDSONG, Presiding Judge.

George Fabe, Insurance Commissioner of the State of Ohio and Liquidator of the American Druggists Insurance Company ("ADIC"), appeals a $450,000 judgment for Maurice L. Floyd on a *Yost v. Torok* abusive litigation claim. (As this action was filed prior to April 3, 1989, OCGA § 51-7-85 is not applicable.) Fabe contends the trial court erred by not giving full faith and credit to an Ohio statute and certain injunctions prohibiting counterclaims against Fabe as he attempted to recover sums owed ADIC; that the evidence did not authorize recovery on an abusive litigation claim; that the damages awarded were excessive; and that the trial court erred by refusing to permit his attorneys to divide their concluding argument.

The record shows ADIC issued performance bonds on behalf of Jones Electrical Company, Inc. ("Jones Electric"), and Floyd was an electrician who worked for Jones Electric. Although Floyd was also listed as the secretary of the corporation, the record shows Floyd performed no duties as secretary, received no pay for this position, owned no stock in the company and may not have known of this title. Further, Floyd never signed any documents on behalf of Jones Electric.

ADIC required that a general indemnity agreement ("the agree-

ment") be signed promising that ADIC would be indemnified for any sums paid on the bond. In this instance, three signatures appeared on the agreement: Mr. Jones', Mrs. Jones', and Floyd's. The signatures of these people were purportedly notarized either by a Mrs. Pace or a Mrs. Jamieson.

Subsequently, ADIC apparently made payments on the bond, and after ADIC became insolvent, Fabe was to liquidate ADIC and recover any sums owed it. When Fabe attempted to recover on Jones Electric's agreement, however, Mr. Jones and Mrs. Jones had been discharged in bankruptcy. Thus, in February 1987 Fabe demanded that Floyd reimburse ADIC for almost $186,000 plus attorney fees under the agreement.

Upon receipt of Fabe's demand, Floyd retained counsel who replied stating Floyd knew nothing about the agreement, denying he signed the agreement, and advising that a *Yost* counterclaim would be filed if Fabe filed suit against Floyd. Later, Floyd also suggested that the Small Business Administration might be liable for the debt.

When efforts to collect from the SBA were unavailing, Fabe again demanded payment from Floyd. Floyd's reply in July 1988 again denied that he had signed the agreement and provided a letter from a handwriting examiner stating that the signatures on the agreement were not Floyd's.

After receiving this information in July 1988, Fabe contacted Mr. Jones about Floyd's signature on the document, and Jones said that Floyd had not signed the agreement and the signature was probably that of another employee.

Thereafter, Fabe asked Floyd to provide the handwriting samples so its own expert could examine them, asked Floyd to prepare an affidavit telling all he knew about the matter, and asked Floyd to agree to waive the statute of limitation on these claims. In September 1988 Floyd agreed only to provide the affidavit, and in November 1988, Fabe filed suit against Floyd alleging that he had executed the agreement. By this, Fabe meant that Floyd had signed the agreement, or he had authorized another to sign the document, or that he had ratified another signing his name to the document.

Floyd denied liability and filed a *Yost* counterclaim against Fabe. Thereafter, Floyd moved for summary judgment on Fabe's claim, supporting his motion with his affidavit denying that he had signed or authorized his signature on the document, with his expert's opinion stating that he did not sign the agreement, and with the affidavits of Jones and Jamieson also stating that Floyd had not signed the agreement.

Although Fabe later reported to the trial court that his own expert had examined samples of Floyd's handwriting and also concluded that Floyd did not sign the agreement, Fabe did not dismiss

the case, but instead argued that Floyd's motion should be denied because of Fabe's theories of authorization or ratification. The trial court, however, granted Floyd's motion for summary judgment on Fabe's claims against him. As Fabe did not appeal this decision, this decision is final, and there is no question that the underlying proceedings were terminated in Floyd's favor.

Subsequently, Floyd's abusive litigation claim proceeded to trial. At trial Mrs. Jamieson, the notary, testified that Floyd did not sign the agreement, that Fabe did not contact her about the matter before the suit was filed, and that if Fabe had, she would have told him that she did not witness Floyd signing the agreement. Mr. Jones also testified that Floyd did not sign the document and that he had informed Fabe of this fact before suit was filed against Floyd. Jones further testified that he did not remember being asked to give Fabe an affidavit about this. Mrs. Jones also testified that Fabe had not contacted her about signatures on the agreement, and testified that if she had been contacted she would have informed Fabe that *she* also had not signed the agreement. Further, Mrs. Pace testified that she did not see Floyd sign the agreement.

Both the experts also testified that Floyd did not sign the agreement. More significantly, however, both testified that the signature was so obviously not Floyd's that it appeared that no effort was made to copy Floyd's signature. Moreover, they agreed that while it is preferable for an examiner to have original samples to consider, in this case, the dissimilarities in the signatures were so great that copies were sufficient.

Although some of Fabe's attorneys and Fabe's assistant, Mr. Motil, testified attempting to explain their actions, the jury awarded Floyd damages of $450,000, and judgment was entered in that amount. Fabe moved to set aside the verdict, for judgment n.o.v., or alternatively for a new trial, and after these motions were denied, Fabe filed a direct appeal.

The trial court awarded attorney fees and expenses of litigation under OCGA § 9-15-14 (a). Fabe's application for discretionary appeal was granted, and Fabe also appealed that judgment. Additionally, Fabe has filed a motion to remand this appeal to the trial court for the limited purpose of the trial court's consideration of a motion under OCGA § 9-11-60 (d) (2) to set aside the judgment because of fraud. Fabe contends that Floyd's attorney misled his counsel by providing them with only one of two versions of Floyd's handwriting examiner's report. *Held*:

1. Our first consideration is our jurisdiction to consider all of the issues on appeal. Court of Appeals Rule 32 (d); *Atlantic-Canadian Corp. v. Hammer, Siler &c. Assoc.*, 167 Ga. App. 257 (306 SE2d 22). The record shows that Fabe's enumerations of error asserting that the

trial court failed to give full faith and credit to the Ohio statute and the injunctions prohibiting counterclaims were the subject of Fabe's motion to set aside the judgment under OCGA § 9-11-60 (d) which was denied in the trial court. Appeals from the denial of a motion to set aside the judgment under OCGA § 9-11-60 (d) are subject to the discretionary appeals procedure (OCGA § 5-6-35 (a) (8)) even when coupled with motions for a new trial or judgment n.o.v. OCGA § 5-6-35 (d). *State Farm &c. Ins. Co. v. Yancey*, 258 Ga. 802 (375 SE2d 39). Accordingly, we are without jurisdiction to consider Fabe's first and second enumerations of error.

2. Fabe next argues that the trial court erred by denying his motions for a directed verdict or for judgment n.o.v. "In determining whether the trial court erred by denying appellants' motions for a directed verdict and motion for judgment n.o.v., this court must review and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict (and judgment n.o.v.) is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, *demands* a certain verdict." (Citations and punctuation omitted.) *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (392 SE2d 268).

(a) Fabe alleges that the trial court erred by denying his motion for a directed verdict because his claim against Floyd was not completely void of justiciable issues of law or fact. He argues he had theories of recovery against Floyd supported by presumptions arising from the signature on the indemnification agreement (see OCGA §§ 11-3-307 (1) (b) and 14-2-151 (a)), and by his theories of ratification and authorization even if Floyd did not sign the agreement.

While a party in Fabe's position is entitled ordinarily to rely on the notarized signature to sue on an agreement such as this, the evidence shows that Fabe knew months before he filed this action that Floyd denied both knowing anything about or having signed the agreement and also knew that Floyd's denial was supported by Mr. Jones' admission that Floyd did not sign the agreement, but that Mr. Jones had someone else sign the agreement, and by Floyd's handwriting examiner's opinion that Floyd did not sign the document. With this information, any presumption arising from the notarized signature was rebutted, and Floyd was not authorized to base his action solely upon any presumptions arising from the signature. Additionally, as the evidence showed noticeably there was no notary seal on the portion of the agreement purporting to acknowledge Floyd's alleged signature, the notarization did not comply with OCGA § 45-17-6 (a) (1), and, accordingly, the notary's signature standing alone would not give rise even to the rebuttable presumption Fabe claims.

Further, although Fabe asserted theories of recovery under ratification or authorization of the signature of the agreement, the record

shows that Fabe never produced evidence to support these theories. Thus, the record shows that these were merely abstract theories with no supporting evidence, and we reject any arguments based upon these unsupported theories.

The evidence in this record clearly and plainly establishes that months prior to filing this action Fabe knew he had *no evidence* to support his theories of recovery against Floyd and a reasonable, low-cost inquiry would have shown there was no likelihood of developing such evidence. This was sufficient to show that Fabe asserted a claim against Floyd with respect to which there was such a complete absence of any justiciable issue of law or fact that it reasonably could not be believed that a court would accept the claim. Fabe's position, however, was that either Floyd would prove to Fabe's satisfaction that he was not liable or Fabe would file suit. This is further demonstrated by the testimony of Mr. Motil in which he read his letter authorizing that the suit be filed: "Because Mr. Floyd refuses to cooperate with us in authenticating the signature in question, I do not believe we have sufficient basis to abandon this claim. Therefore, in my opinion as Deputy Liquidator, I believe that an action against him would not be frivolous and I do hereby instruct you to file suit against him in an effort to collect the amount owed to ADIC." No mention was made of any evidence supporting the claim; only that Floyd, who this record shows to be a mere victim of circumstances, would not cooperate with them. Accordingly, we are satisfied that the evidence supports the verdict. *Yost v. Torok*, 256 Ga. 92, 96 (344 SE2d 414).

(b) Fabe next contends that even if his claim was completely without justiciable issue of law or fact, the trial court erred by denying his motion for a directed verdict because Floyd produced no evidence that Fabe's conduct was wilful or wanton and thus no damages were authorized. See *Deutz-Allis Credit Corp. v. Phillips*, 193 Ga. App. 79, 80 (387 SE2d 34); *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 796 (359 SE2d 920). *Yost v. Torok*, supra at 95, however, specifically authorizes the award of "special damages, *other than* attorney fees and expenses of litigation; damages for mental distress, where there is either wilfulness, or wanton and reckless disregard of consequences which is the equivalent of wilfulness (see *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 252 Ga. 149 (311 SE2d 818) (1984)); or nominal damages pursuant to OCGA § 51-12-4." Therefore, the issue here is whether Fabe's actions in filing a lawsuit which was completely without a justiciable issue were wilful or the equivalent of wilfulness.

In considering this issue we must note that the record shows that there is no question that Fabe knew the notarized signature was disputed, and Fabe did not contact the notary to ascertain what her testimony would be about this issue and Fabe presented no evidence or

reason for not contacting the notary. Moreover, we also note that, other than Jones, who supported Floyd, Fabe did not contact any other purported witness or signatory of the indemnification agreement (who also supported Floyd at trial).

Additionally, the record shows that Fabe failed to seek another handwriting examiner's opinion about the signature on the indemnification agreement before he filed this action. Although Fabe contends that this was because Floyd refused to provide handwriting samples, the record does not show that Fabe ever inquired whether the samples already in Fabe's possession would provide a sufficient basis for examination. Indeed, the record also shows that while complaining that Floyd refused to provide original handwriting samples, the original of the agreement was kept in Fabe's records in Ohio. Further, Fabe's expert, who subsequently determined that the signature was not Fabe's, admitted that copies of Floyd's handwriting would have been sufficient for him to have rendered his opinion because the signatures were obviously not the same.

The evidence shows that Fabe's pretrial investigation resulting in his decision to file suit primarily consisted of two attorneys comparing the signature on the agreement with copies of Floyd's signature and deciding that Floyd had signed the agreement, the discussion with Jones, and their efforts to force Floyd to prove to them that he did not execute the agreement. It is noteworthy that, except for the two attorneys' review of the signature, *no* investigation produced any evidence that Floyd had executed the agreement, and in fact, every effort only produced more evidence that Floyd did not execute the agreement.

Moreover, we note that one of Fabe's attorneys in effect testified that even knowing that their own expert said that Floyd had not signed the agreement, that Jamieson said she had signed the notarization in blank, and that Jones said that Floyd had not signed or known of the document, he had no regrets about filing the action.

Additionally, we note that even after his handwriting examiner supported Floyd, Fabe's attorney represented to the trial court that "newly discovered evidence casts serious doubt upon [Floyd] and his witnesses and their contention that [Floyd] did not authorize another person to sign the general indemnity agreement on his behalf." The record shows, however, that what counsel asserted were contradictions in the witnesses' testimony concerned matters *unrelated* to whether Floyd had signed or authorized another to sign the agreement.

We can only conclude from the evidence that Fabe intentionally filed this action without evidence to support his claim, without regard for whether there was any evidence to support his claim, and without regard for properly investigating the claim. Instead, Fabe's actions

appear to have been limited to finding legal theories which conjecturally might authorize bringing the lawsuit. This is not a case in which the plaintiff learned after the action was filed that his proof failed. This was a case in which the proof failed before the action was filed. "[R]eckless and wanton disregard of consequences may evince an intention to inflict injury." *Hamilton v. Powell, Goldstein, Frazer &c.,* supra at 150. The evidence in this case shows that the action was filed wilfully and without regard to the consequences of Floyd having to defend this meritless action. Further, *Wheat v. First Union Nat. Bank,* 196 Ga. App. 26 (395 SE2d 351) has no application here because the evidence shows that Fabe wilfully filed this action with full knowledge of the circumstances. Mere negligence played no part in this case.

Accordingly, the evidence fully supports the required finding that Fabe's actions in filing this groundless case were wilful or its equivalent, by means of a wanton and reckless disregard of consequences, and thus did support the imposition of damages for mental distress. *"There is the need to contain the corrupting effect of groundless claims. . . ."* (Emphasis supplied.) *Yost v. Torok,* supra at 93.

(c) Fabe also argues that because Floyd refused to provide additional handwriting samples as Fabe requested and did not independently provide information about Jamieson, he was not authorized to maintain a *Yost* claim, and the trial court erred by denying Fabe's motion for summary judgment, motion for directed verdict, and motion for judgment n.o.v. asserting that defense.

As the case proceeded to verdict and judgment on the merits, Fabe's arguments concerning the denial of his motion for summary judgment are moot. *Hardaway Constructors v. Browning,* 176 Ga. App. 530 (336 SE2d 579).

Fabe's argument seeks to place a burden on Floyd which does not exist in our law. A defendant is not required to prove to the plaintiff's satisfaction that no claim exists. Further, this is not a case in which Floyd did not make a reasonable attempt to show Fabe there was no merit to his case. On the contrary, in addition to denying that he had signed the agreement, Floyd presented Fabe with the opinion of an expert stating that he did not sign the agreement. Additionally, before this request was made Fabe knew from Jones that Floyd did not sign the agreement. It is not Floyd's fault that Fabe thereafter refused to contact the witnesses, especially the obvious witness Jamieson, necessary to ascertain that he had no case against Floyd. Also, we note that Fabe did not merely ask Floyd to provide handwriting samples, but also asked for an affidavit detailing Floyd's exact knowledge of this matter and asked for a waiver of the statute of limitation. Since Floyd refused to dismiss this action even after his own expert

stated that the signature was not Floyd's, there is no reason to believe that anything Floyd could have done would have dissuaded Fabe from pursuing this abusive litigation.

Therefore, ample evidence supports the verdict. Consequently, the trial court did not err by denying the motions that Fabe complains of in these enumerations of error. *Southern Store &c. Co. v. Maddox*, supra.

3. Fabe also enumerates as error the denial of his motion for new trial because the verdict was grossly excessive and unwarranted by the evidence, the verdict was so excessive as to violate the due process clause, and the verdict was so excessive as to constitute punitive damages which are forbidden in a *Yost v. Torok* claim.

It is well settled in this state that the proper standard for assessing damages in cases such as this is the enlightened conscious of the jury. "A verdict in one of that class of cases in which the amount of damages is left to the enlightened conscience of the jury is not to be declared by a reviewing court to be excessive, unless it is so large in amount as to justify the court in believing that it could not reasonably have resulted from any other cause than bias or gross mistake on the part of the jury. [This is usually] a matter of inference; and in that event the solution falls within the rule as to circumstantial evidence, there must be no reasonable hypothesis other than that the bias or mistake did exist. The presumption is that the jurors were impartial and understood their case. It is, therefore, a more reasonable hypothesis that their finding was based on the evidence considered impartially." (Citation and punctuation omitted.) *Realty Bond &c. Co. v. Harley*, 19 Ga. App. 186, 189 (91 SE 254). "An excessive or inadequate verdict constitutes a mistake of fact rather than of law. It addresses itself to the discretion of the trial judge who saw the witnesses and heard the testimony. This court is a court for the correction of errors of law only, and this court's jurisdiction is confined to the question of whether the trial court abused his discretion in overruling the motion for a new trial on this ground." *St. Paul Fire &c. Co. v. Dillingham*, 112 Ga. App. 422, 425 (145 SE2d 624). With those principles before us, we examine Fabe's specific arguments.

Fabe first asserts that Floyd's evidence regarding his mental distress was not sufficient to support damages in the amount of $450,000. Fabe asserts that only Floyd's testimony supports the verdict and that because Floyd did not call other witnesses to testify about his mental suffering, Floyd's case was insufficient. Our law places the responsibility for assessing the evidence on the jury. The jury saw and heard Floyd testify. The jury could measure the sincerity of his testimony and the depth of his mental suffering. Floyd's testimony about his mental suffering was not extensive, but it was *unrebutted*. He testified that "it's just something that . . . gnaws at you all the time. It's

always at the back of your mind. . . . It's just tough. . . . After a while I felt like that we were trying to do y'all's work at my expense and I felt like we had proven that I was innocent." The lawsuit "worried" him. Further, "on the inside there was always something gnawing at you and you really couldn't enjoy anything . . . because it was always in the back of your mind. . . . I tried every way possible I could to get this thing settled . . . and they just kept on and on and on and . . . it was tough to sleep at night, tough to get out and enjoy life and do the things you ought to do."

We cannot say as a matter of law that a small business man facing a lawsuit as Floyd did in which the plaintiff vigorously sought to collect a meritless claim for $186,000 is any small matter. Nor can we say as a matter of law that Floyd should not have suffered mentally because he should have known that he would prevail for even then he had worries about funding of the defense, paying attorney fees and all the other costs associated with being on the receiving end of this meritless and abusive lawsuit. Moreover, Floyd's testimony is amply supported by the record. Fabe's relentless prosecution in this case was undeterred by the absence of evidence; Fabe did keep "on and on and on" in spite of the total absence of evidence supporting his claim. Further, the testimony at trial from Fabe's witnesses evinced a lack of genuine concern or remorse for Floyd's mental suffering and a readiness to file suit again notwithstanding the trial court's grant of summary judgment to Floyd and knowledge that the case could not be proven.

Further, we are not persuaded that Fabe's counsel's representations that she hoped Floyd would not be too inconvenienced meant anything. Those assurances fail to appreciate the significant emotional differences between being a hapless, innocent defendant rather than a non-party litigating attorney. We find no merit to these assertions.

Throughout this appeal Fabe has argued that Floyd should not be permitted to recover $450,000, or about $4,000 for each of the 109 days suit was pending against him. We note, however, that Floyd faced a claim for over $185,900 for 109 days or almost $1,700 per day. We also note that his recovery was less than three times the amount of Fabe's suit, not counting the court costs, interests, and attorney fees which Fabe also sought to recover. Thus while his recovery was large, it did not grossly exceed the damage sought against him, especially when coupled with other potential costs.

Fabe also contends that the verdict must be overturned because it is in the nature of an award of punitive damages which are prohibited in a *Yost v. Torok* claim. In this argument he relies upon what Fabe claims to be improper argument by Floyd's counsel. Review of the record shows, however, that Fabe never objected to the argument

of which he now complains and made no motion to restrict the argument. Since there was no objection in the trial court, we cannot consider this issue. "When allegedly improper argument is made to the jury, opposing counsel must object at trial or otherwise invoke a ruling of the trial court. Failure so to object constitutes waiver. [Cits.]" *Verde v. Granary Enterprises*, 178 Ga. App. 773, 774 (345 SE2d 56). In this case, Fabe did nothing to cause the trial court to rule on this issue. A party cannot ignore what he deems as error, remain silent taking his chance on a favorable verdict, and then assert the error on appeal. *Bolden v. Carroll*, 239 Ga. 188 (236 SE2d 270). Additionally, review of the argument shows that it was based upon the evidence of Fabe's conduct and conduct of Fabe's attorneys at trial. See *Miller v. Coleman*, 213 Ga. 125, 130 (97 SE2d 313).

4. Finally, Fabe contends that the trial court erred by not allowing his attorneys to divide his concluding argument. Pretermitting whether OCGA § 9-10-182 and Uniform Superior Court Rule 13.3 prohibit dividing concluding argument as Fabe wished, the transcript shows that when the trial court made the ruling it offered Fabe the opportunity to cite authority to the contrary, but Fabe refused the opportunity with a remark to the effect that he could just tell co-counsel what he intended to say. Under the circumstances, Fabe waived any objection as he acquiesced to the ruling. *Ewing v. Johnston*, 175 Ga. App. 760 (334 SE2d 703). Although a party need not except to an unfavorable ruling (see OCGA § 9-11-46 (a)), he cannot merely agree to the procedure directed by the trial court (*Harmon v. State*, 259 Ga. 444 (3) (383 SE2d 874)); neither can he engage in conduct or trial procedure which aids in fostering the ruling of which he now seeks to complain. *Nodvin v. West*, 196 Ga. App. 825, 829 (3) (e) (397 SE2d 567).

### Case No. A91A0229

5. Fabe's motion to consolidate these appeals is granted. Fabe also contends that the trial court erred by awarding Floyd attorney fees and expenses of litigation under OCGA § 9-15-14. The record shows that the trial court judgment in favor of Floyd was encompassed within the grounds for awarding these expenses under OCGA § 9-15-14 (a); as a result the award of attorney fees and expenses of litigation were mandatory. *Haggard v. Board of Regents &c.*, 257 Ga. 524, 526 (360 SE2d 566). Therefore, the trial court did not err by awarding these expenses and attorney fees.

### Case Nos. A90A2217 and A91A0229

6. Fabe's motion for a limited remand is denied. We do not find that consideration of the issue raised in this motion is necessary to

disposition of this appeal. Therefore, it is appropriate that the normal procedure for motions under OCGA § 9-11-60 (d) (2) be followed, including procedures for appellate review *if necessary.* OCGA § 5-6-35 (a) (8).

7. Floyd's motion for imposition of sanctions against Fabe for filing the motion for remand is also denied.

8. Floyd's motion to transfer this appeal to the Supreme Court is denied. All issues in this appeal are within the jurisdiction of this court.

*Judgments affirmed. Banke, P. J., and Cooper, J., concur.*

## ON MOTION FOR REHEARING.

1. Fabe's motion for rehearing asserts we erred in holding his failure to follow the discretionary appeals procedure deprived this court of jurisdiction to consider the issues in Division 1 above. He argues these issues were preserved as the trial court denied his motions to the same effect earlier in the proceedings and because he did not invoke OCGA § 9-11-60 (d) in his post-trial motion.

While Fabe asserted these issues earlier in the proceedings, he also unquestionably asserted these points in his post-trial motion, which was entitled, "Motion to Set Aside and Vacate Verdict and Judgment, for Judgment Notwithstanding the Verdict, or in the Alternative, Motion for a New Trial." Further, Fabe relied on the lack of subject matter jurisdiction, one of the grounds for a motion to set aside the judgment. OCGA § 9-11-60 (d) (1). Thus, neither Fabe's misstating the record by asserting that his post-trial motion was only to reconsider earlier rulings, nor his failure to cite OCGA § 9-11-60 (d), is of any consequence. See *Holloway v. Frey,* 130 Ga. App. 224, 227 (202 SE2d 845). The motion denied was to set aside the judgment under OCGA § 9-11-60 (d), and the discretionary appeals procedure is applicable. See *State Farm &c. Ins. Co. v. Yancey,* 188 Ga. App. 8, 9 (371 SE2d 883). Further, "[a] careful reading of OCGA § 5-6-35 leads us to the inescapable conclusion that the legislature never intended the application process to be circumvented." *State Farm &c. Ins. Co. v. Yancey,* 258 Ga. 802 (375 SE2d 39).

Moreover, compliance with the discretionary appeals procedure is jurisdictional. *State of Ga. v. Baldwin,* 187 Ga. App. 611, 612 (371 SE2d 135). Therefore, Fabe's failure deprives this court of jurisdiction. Accordingly, dismissal of this portion of Fabe's appeal is required. *State Farm &c. Ins. Co. v. Yancey,* supra.

While Fabe argues that he can assert these arguments at any time, he must do so in a court having appellate jurisdiction. His failure to comply with the discretionary appeals procedure deprives this court of jurisdiction just as if he failed to file a timely notice of appeal. OCGA § 5-6-48 (b) (1).

2. Fabe argues that he was entitled to rely on Floyd's forged signature. The thrust of this argument is that Fabe could file suit knowingly relying on a forged signature. No presumption in our law authorizes such conduct. See OCGA § 24-1-1 (6).

Fabe cites OCGA § 14-2-151 (a), concerning corporate seals, as such a presumption. He does not cite, however, OCGA § 14-2-151 (b), which provides: "[A] third party without knowledge or reason to know to the contrary may rely on such document as being what it purports to be." Since Fabe had knowledge to the contrary, he could not rely on any presumption under OCGA § 14-2-151 (a). In any event, this Code section concerns *the corporation,* and it would not entitle Fabe to a presumption that Floyd's forged individual signature was valid. Thus, this authority and other precedent, authorizing an action against a corporation because of the corporate seal, are not persuasive in this action brought against Floyd individually.

Further, Fabe's primary argument has been that he could rely on Floyd's forged notarized signature to bring this action against Floyd individually. The copies of the agreement in the record, however, show that Floyd's only notarized signature was his forged signature in the "firm acknowledgement," and that there is *no* acknowledgement for Floyd's forged signature as an individual indemnitor.

This "firm acknowledgement" differs significantly from the individual acknowledgement. The "firm acknowledgement" in relevant part provides: "[Floyd] thereupon acknowledged to me that he executed the same *as and for the act and deed of said firm."* (Emphasis supplied.) The individual acknowledgements in the record do not contain the emphasized language.

As this action was against Floyd individually, the presumptions Fabe offers, even if valid, would not support filing this lawsuit against Floyd. Further, although asserting that he could bring this lawsuit relying on actions of Floyd's attorney, Fabe provides no theory for how such conduct could prove that Floyd signed the document which Fabe knew was forged prior to filing suit. While Fabe cites *Shiver & Barnett v. Firemen's Ins. Co.,* 60 Ga. App. 57, 58 (2 SE2d 760), this case is not authority for the proposition he asserts. *Shiver* concerns the rebuttable presumption that arises from a party's failure to produce evidence in his possession at trial, not the circumstances here. In any event, even a *Shiver* presumption does not arise if the party has no burden of producing evidence. *Southern Express Co. v. B. R. Elec. Co.,* 126 Ga. 472, 477-478 (55 SE 254). Moreover, this argument is contrary to trial testimony from one of Fabe's attorneys that they could only rely on the information they had and not what Floyd's attorney said. We note that the information Fabe had that Jones had Floyd's signature forged was the result of Fabe's own investigation and was not information received from Floyd or Floyd's attorney.

As there were no presumptions for Fabe to rely on, his arguments on when presumptions may be rebutted are meaningless.

3. Fabe argues that we "egregiously" overlooked the decision of our Supreme Court in *Central of Ga. R. Co. v. Swindle*, 260 Ga. 685 (398 SE2d 365), and accuses us of "abdicating [our] responsibility to consider the entire record when reviewing damage awards."

*Swindle*, an action under the Federal Employers' Liability Act ("FELA"), stated: "Damages recoverable in an FELA action are compensatory only." 260 Ga. at 686. Therefore, the jury was limited in its considerations in reaching its verdict, and a different standard of review could be employed in measuring whether the verdict was excessive.

Here, while punitive damages were not authorized separately, the jury was authorized to award damages for Floyd's mental distress (*Yost v. Torok*, supra at 95, n. 3), and the damages are awarded according to the enlightened conscience of impartial jurors, a much broader standard. See *Westview Cemetery v. Blanchard*, 234 Ga. 540, 544-546 (216 SE2d 776). *Swindle* is not precedent here.

Fabe also complains that we did not refer to certain testimony he believes favors his case. This argument disregards the basic rule that on appeal we must construe the evidence most strongly in support of the verdict. See *J. C. Penney &c. Ins. Co. v. Woodard*, 190 Ga. App. 727 (380 SE2d 282). Therefore, our failure to refer to evidence which might have supported Fabe's case, if the jury had chosen to credit it, does not mean that we did not consider it. In the same manner, our failure to refer to Fabe's attorney asking Floyd's attorney on cross-examination in open court, "[D]id you go to law school?," did not mean that we did not consider it, as we assume the jury also did in assessing the damages to be awarded. Moreover, the evidence suggests that Fabe's real feelings were reflected in the testimony from his witnesses suggesting that a $185,000 loss could not be written off without someone being sued.

Fabe also complains that the amount Fabe was sued for should not be considered in measuring whether the damages awarded Floyd were excessive. This argument fails to consider rather basic human nature: One facing a lawsuit for one or 100 dollars reasonably could be expected to suffer less mental distress than one facing a suit for over $185,000. Further, Floyd's testimony alone was sufficient to prove his mental suffering. See OCGA § 24-4-8.

4. Fabe's other arguments on issues he waived are also not persuasive. He made no motion to restrict Floyd's argument and made no objection to any part of the argument. Also, the record shows that when the trial judge offered Fabe's attorney the opportunity to present additional argument on the divided argument issue, Fabe refused by stating, "I think I could just tell him [co-counsel] what I wanted

to." These issues were waived. In any event, it is not apparent that the trial court abused its discretion by refusing to permit the divided argument. *Goforth v. Wigley*, 178 Ga. App. 558, 561 (343 SE2d 788).
*Motion for rehearing denied.*

DECIDED MARCH 12, 1991 —
REHEARING DENIED MARCH 27, 1991 — 

*Andrew J. Hill, Jr., Dow, Lohnes & Albertson, Terrence B. Adamson,* for appellant.
*Cornwell, Church & Healy, James E. Cornwell, Jr., Cathey & Strain, Edward E. Strain III,* for appellee.