A01A1960. McCORMICK et al. v. HARRIS.
(559 SE2d 158)

MIKELL, Judge.

Katie Hazel McCormick sued Elbert Neal Harris for injuries she sustained in an automobile accident. McCormick's husband, Dewey McCormick, sued for loss of consortium. The jury returned a verdict awarding $1,500 in damages to Mrs. McCormick and no damages to Mr. McCormick. The McCormicks appeal from the denial of their motion for a new trial, arguing that a new trial should have been granted because the small amount of damages awarded by the jury justifies the inference of gross mistake or undue bias. We affirm the judgment of the trial court.

1. As a preliminary matter, we must address Harris' challenge to our jurisdiction in this case. A notice of appeal was filed on behalf of both Mr. and Mrs. McCormick. Because the judgment for Mrs. McCormick was under $10,000, she normally would have been required to file an application in order to pursue this appeal, pursuant to OCGA § 5-6-35 (a) (6). However, because no application is required for the appeal of a "zero" award, the judgment with respect to Mr. McCormick is directly appealable. *Smith v. Curtis*, 226 Ga. App. 470 (486 SE2d 699) (1997). "As a consequence, the judgment entered in favor of [Mrs. McCormick] is also directly appealable." Id. at 470, n. 1.

Harris emphasizes that the McCormicks have not enumerated an error regarding the judgment on the loss of consortium claim, nor have they raised any argument regarding Mr. McCormick's claim in their appellate brief. Therefore, Harris argues that Mr. McCormick's appeal should be dismissed and that we no longer have jurisdiction over Mrs. McCormick's appeal. We disagree. Mr. and Mrs. McCormick properly filed a direct appeal of the judgment entered by the trial court, and we have jurisdiction to consider the merits of their appeal.

2. Viewed in the light most favorable to the jury's verdict, the evidence shows that on March 2, 1999, Mrs. McCormick's car was stopped on Georgia Highway 19, preparing to make a left turn, when Harris struck her vehicle from the rear. After the accident, Mrs. McCormick was taken to the hospital by ambulance. There, she complained of nausea and numbness. She testified that she did not recall feeling pain in any particular part of her body at the emergency room. She further testified that she experienced pain in her neck and back two days after the accident and that it subsequently subsided. Mrs. McCormick did not experience knee and elbow pain until approximately three weeks after the accident. She sought treatment for her knee problems for the first time on March 29, 1999, when she visited Lisa Smith, a physician's assistant.

Mrs. McCormick was subsequently treated by Dr. John I. Waldrop, M.D., and Dr. Robert Bartosh, M.D., both of whom are certified orthopedic surgeons. Both doctors diagnosed a condition in Mrs. McCormick's right knee known as chondromalacia, which they described as a roughening of the back surface of the kneecap. Dr. Bartosh testified that this condition can develop over a period of time through "gradual wear and tear" or can be caused by trauma. Similarly, Dr. Waldrop testified that chondromalacia "can be traumatic or it can be a degenerative process and can develop with no injury whatsoever" and that it was more common for this condition to occur through a natural process than to be caused by an accident. Both doctors testified that it would be unusual for a patient who had sustained a significant knee injury in a car accident not to have exhibited any symptoms or have experienced any pain within two weeks of the accident. Dr. Waldrop acknowledged that there was no way of knowing whether Mrs. McCormick's knee condition was caused by the automobile accident or whether it had progressed naturally over a period of time.

Mrs. McCormick testified that she had not experienced knee problems before the accident, and she presented evidence showing that her medical bills, including treatment of her knee, totaled $3,939.86 and that the cost of future knee surgery would be $7,500. The jury awarded her $1,500.

3. On appeal, the McCormicks argue that the trial court erred in denying their motion for new trial, because the jury's verdict awarded such a small amount of damages that an inference of gross mistake or undue bias was justified. We disagree.

> The general rule on appeal of an award of damages is that a jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in the light of the evidence, as to create a clear impli-

> cation of bias, prejudice, or gross mistake on the part of the jurors. [Cits.] Even though the evidence is such as to authorize a greater or lesser award than is actually made, the appellate court will not disturb it unless it is so flagrant as to "shock the conscience." [Cits.] . . . [T]he trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence. [Cits.]

*Cullen v. Timm*, 184 Ga. App. 80, 82-83 (2) (360 SE2d 745) (1987). OCGA § 51-12-12 (a) provides: "The question of damages is ordinarily one for the jury; and the court should not interfere with the jury's verdict unless the damages awarded by the jury are clearly so inadequate or so excessive as to be inconsistent with the preponderance of the evidence in the case." Applying these principles, we cannot conclude that the jury's award was so flagrantly inadequate as to shock the conscience, nor do we find that it is inconsistent with the evidence.

It is well settled that a plaintiff cannot recover for injuries sustained as a result of a defendant's negligence unless the plaintiff shows that the defendant's negligence was the proximate cause of the injury. *Blosfeld v. Hall*, 236 Ga. App. 286, 288 (511 SE2d 196) (1999). In this case, there was ample medical testimony to justify the jury's conclusion that the knee problems for which Mrs. McCormick sought damages were not proximately caused by the accident. The bill for Mrs. McCormick's emergency room visit immediately following the accident was $729.40. Through its $1,500 verdict, it is possible that the jury awarded Mrs. McCormick the amount of the emergency room bill, as well as an additional amount of damages to compensate her for pain and suffering.

The amount of damages returned by a jury in a verdict for pain and suffering due to alleged negligence "is governed by no other standard than the enlightened conscience of impartial jurors." (Citation and punctuation omitted.) *Palmer v. Farmer*, 184 Ga. App. 753, 754 (3) (362 SE2d 453) (1987). See also *Gurly v. Hinson*, 194 Ga. App. 673, 675 (8) (391 SE2d 483) (1990). "We decline to substitute our judgment based upon a cold record for that of enlightened jurors who heard the evidence and saw the witnesses." (Citation and punctuation omitted.) *Herr v. Withers*, 237 Ga. App. 420, 423 (515 SE2d 174) (1999).

The cases relied upon by the McCormicks, *Carter v. Reese*, 150 Ga. App. 494 (258 SE2d 165) (1979); *Brewer v. Gittings*, 102 Ga. App. 367 (116 SE2d 500) (1960); and *Anglin v. City of Columbus*, 128 Ga. 469 (57 SE 780) (1907), are distinguishable from the case sub judice, and their reliance is misplaced. In each of those cases, the evidence that the plaintiffs' significant injuries were proximately caused by

the accidents at issue was uncontroverted. In the case sub judice, however, there was a jury issue as to whether the accident proximately caused Mrs. McCormick's knee condition, and there is medical evidence that the condition for which she sought to recover may not have been caused by her accident with Harris.

4. The McCormicks also allege gross mistake or undue bias on the part of the jury based on a question asked during its deliberation. The jury submitted the following written question to the judge: "How does our finding on the defendant's negligence or non [sic] relate to our findings of any monetary damages? Does a not guilty negate any possible monetary damages?" The McCormicks state in their appellate brief that the trial court then brought the jurors back into the courtroom and charged them on the difference between civil and criminal cases. The record does not contain a transcript of the court's charge; however, the appellants have not assigned error to the charge given. Contrary to the McCormicks' argument, we do not find that the jury's question necessitates a finding of bias or gross mistake. "The presumption is that the jurors were impartial and understood their case." (Citation and punctuation omitted.) *Fabe v. Floyd*, 199 Ga. App. 322, 329 (3) (405 SE2d 265) (1991).

Accordingly, in light of the evidence presented, the jury's award did not raise a clear implication of bias, prejudice, or gross mistake. Finding no error in the trial court's denial of the motion for new trial on the asserted grounds, we affirm.

*Judgment affirmed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED JANUARY 24, 2002.

*Ellis & Easterlin, George R. Ellis, Jr.*, for appellants.
*Perry & Walters, Robert K. Raulerson*, for appellee.