**FIFTH DIVISION**
**BROWN, C. J.,**
**RICKMAN, P. J., and MERCIER, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 22, 2026**

# In the Court of Appeals of Georgia

A26A0229. BARKER v. GRIER.

RICKMAN, Presiding Judge.

Following a jury trial in this personal injury case arising from an automobile collision, the defendant, Marquiz Barker, appeals from the trial court's order denying his motion for a new trial. Barker contends that recent amendments to OCGA § 9-10-184 require a new trial, that the jury award was improperly punitive, and that the jury award was not adequately supported by the evidence. Barker also enumerates as error the trial court's denial of his motion for remittitur. For the reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that in December 2021, Owauniss Grier injured her knee, back, neck, and thumb in an automobile collision caused by Barker. Grier testified that her "whole body just felt like [she] got hit by a truck. [Her] whole body was sore from that point on." Grier was subsequently treated by a medical provider for knee, neck, and back pain; she rated her pain as an eight out of ten at the time. The provider gave her a back brace and a TENS unit and scheduled an MRI. Grier ultimately learned that she has a bulging disc in her back from the collision that will always cause her pain. Grier's thumb was bent crooked in the incident and will remain that way permanently.

After discovering the disc bulge, Grier attempted conservative treatment, including therapy. She ultimately underwent 19 injections to treat her knee and back pain. The injections were painful but provided some relief from her knee and back pain. Her doctor explained that there was nothing else they could do for the knee pain other than surgery, but that she could try a knee brace and pain pills.

Grier was 34 years old when the collision occurred and 37 at the time of trial. Since the collision, Grier has not been able to perform well at work, go to the gym, or

---

[1] See *Clements v. Weaver*, 301 Ga. App. 430, 430 (687 SE2d 602) (2009).

walk with her children. She endures embarrassment because she drags her leg, and she can no longer do things she enjoys such as shopping with her children at the mall. Grier testified that she cannot wear high heels and that she does not "even want to go out because who wants to be walking around like that and [she is] young. It stripped [her] from everything that [she likes] to do. It stripped [her] from [her] whole life. [Her] whole life has changed from that." Grier's injuries from the collision have interfered with her sleep, required her to depend on her children for help, and caused her to be depressed. At the time of trial in September 2024, Grier was still dealing with pain resulting from the collision and still needed the back brace to help with pain.

The jury returned a verdict awarding Grier $450,000 in damages. The trial court entered judgment on the verdict, and Barker filed a motion for new trial, or, in the alternative, a remittitur. The trial court denied the motion, and this appeal followed.

1. Barker contends that recent amendments to OCGA § 9-10-184 require a new trial.

In September 2024, when this case was tried, OCGA § 9-10-184 (2024) provided, in its entirety, as follows: "In the trial of a civil action for personal injuries,

3

counsel shall be allowed to argue the worth or monetary value of pain and suffering to the jury; provided, however, that any such argument shall conform to the evidence or reasonable deductions from the evidence in the case." Recent amendments to OCGA § 9-10-184 became effective on April 21, 2025, after the trial of this case and while post-trial motions were pending. Ga. L. 2025 at 9, § 1. As amended, OCGA § 9-10-184(c)(1) provides as follows:

> In the trial of any action to recover damages for bodily injury or wrongful death, counsel for any party shall be allowed to argue the worth or monetary value of noneconomic damages only after the close of evidence and at the time of such party's first opportunity to argue the issue of damages, provided that such argument shall be rationally related to the evidence of noneconomic damages and shall not make reference to objects or values having no rational connection to the facts proved by the evidence.

OCGA § 9-10-184(c)(2), in turn, provides:

> If counsel is entitled to the opening and concluding arguments, then counsel shall not be allowed to argue the worth or monetary value of noneconomic damages during such counsel's concluding argument unless counsel has argued the worth or monetary value of noneconomic damages during such counsel's opening argument, and such counsel shall not argue a different worth or monetary value of noneconomic

4

damages in concluding arguments than was argued in such counsel's opening argument.

Barker contends Grier's counsel violated OCGA § 9-10-184, as amended, by asking the jury to "give Ms. Grier 500 dollars for every single day that the defense has denied taking responsibility" for the first time in his rebuttal closing argument. Barker argues that the $500 per day figure is not "rationally related to the evidence" and that because Grier's counsel did not argue that her noneconomic damages were valued at $500 per day for over 1,000 days in his initial closing argument, Grier's counsel violated OCGA § 9-10-184(c)(2)'s prohibition on surprise tactics.

The 2025 amendments to OCGA § 9-10-184 "apply to causes of action pending on the effective date." Ga. L. 2025 at 323 § 9(b). Barker argues that a new trial is required because this case was still pending on the effective date of the 2025 amendments. However, although the General Assembly clearly intended the 2025 amendments to OCGA § 9-10-184 to apply to cases pending on the effective date of the amendments, the General Assembly did not indicate whether those amendments would apply to pending cases with respect to trials that had occurred prior to the effective date of the amendments. The Supreme Court of Georgia has explained that

"to apply a procedural statute retroactively generally does not mean that it applies with respect to prior filings, proceedings, and occurrences, but rather that the procedural change affects future court filings, proceedings, and judgments that arise from prior occurrences." *Burns v. State*, 313 Ga. 368, 373(3) (870 SE2d 360) (2022) (punctuation omitted). "The critical issue is the relevant activity that the rule regulates. Absent clear statement otherwise, only such relevant activity which occurs *after* the effective date of the statute is covered." Id. (punctuation omitted).

Here, the relevant activity that the new OCGA § 9-10-184(c) regulates is either "the trial of any action to recover damages for bodily injury or wrongful death," OCGA § 9-10-184(c)(1), or the closing arguments in such a trial.[2] Because the trial here had concluded more than seven months before the effective date of the 2025 amendments to OCGA § 9-10-184, the 2025 amendments do not apply with respect to the trial. Consequently, this enumeration provides no basis for reversal.

2. Barker next argues that the trial court erred in denying his motion for new trial or remittitur because the jury's award was improperly punitive. This argument is based on statements that Grier's counsel made during closing arguments. However,

---

[2] In this case, we need not decide whether the relevant activity is the entire trial or just closing arguments.

Barker did not object to those statements at trial. In *Williams v. Harvey*, 311 Ga. 439 (858 SE2d 479) (2021), "[t]he issue of whether appellate review is available in civil cases to review a claim of allegedly improper argument in the absence of a contemporaneous objection [was] squarely before [the Supreme Court of Georgia]." Id. at 449(1)(b). The Court held that "there is no reason to review unpreserved claims of error in closing argument in civil cases[.]" Id. Because Barker failed to object to the statements at issue made by Grier's counsel during closing arguments, Barker waived this argument.[3]

3. Barker contends that the trial court erred in denying his motion for a new trial because the $450,000 jury award was not adequately supported by the record. We disagree.

"In Georgia, damages may be awarded for past, present, and future pain and suffering beginning at the time of the injury for which the lawsuit was filed." *S. Clearing & Grinding v. Garcia*, 375 Ga. App. 62, 65(3)(a)(ii) (913 SE2d 732) (2025) (punctuation omitted). "The amount of damages returned by a jury in a verdict for

---

[3] We note that Barker's brief failed to comply with Ga. Ct. App. R. 25(a)(5), which requires an appellant's brief to identify how each enumerated error was preserved for review.

pain and suffering due to alleged negligence is governed by no other standard than the enlightened conscience of impartial jurors." *McCormick v. Harris*, 253 Ga. App. 417, 419(3) (559 SE2d 158) (2002) (punctuation omitted).

Here, Grier testified that she injured her knee, thumb, and back in the accident, has suffered pain as a result, and will likely continue to experience pain as a result of her injuries for the rest of her life. In its order denying Barker's motion for new trial, the trial court stated that it was "satisfied that substantial, competent evidence supports the jury's verdict of $450,000" and that the "damages awarded fall well within the range proven at trial[.]"

Barker maintains that the jury did not have any evidence to rely on to calculate Grier's pain and suffering. He argues that in negligence cases, "the jury award is typically linked to the amount of medical expenses introduced at trial." According to Barker, the evidence was insufficient to support the jury's $450,000 award because Grier did not introduce the testimony of any expert or medical provider and did not introduce any medical bills or otherwise quantify her medical expenses. However, it is well established that "[t]here exists no yardstick against which damages for pain and

suffering are to be measured[.] *AT Systems Se. v. Carnes*, 272 Ga. App. 671, 672(1) (613 SE2d 150) (2005). Consequently, Barker has not shown error on this basis.

*Judgment affirmed. Brown, C. J., and Mercier, J., concur.*